Charles J. PERMAN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–49.

United States Court of Veterans Appeals.

Argued Dec. 2, 1992.

Decided June 16, 1993.

Ronald L. Smith, Washington, DC, for appellant.

Angela Foehl, with whom James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

FARLEY, Associate Judge:

Appellant appeals from an October 2, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied appellant's claim of entitlement to service connection for hypertension as secondary to his service-connected post-traumatic stress disorder (PTSD). During December 2, 1992, oral argument, the Court raised the question, sua sponte, whether appellant had filed a valid Notice of Disagreement (NOD) necessary to confer subject matter jurisdiction on the Court. The Court informed the parties that they could file legal memoranda regarding their respective positions on this issue, and indicated that a decision in this case may be held pending a resolution of *Hamilton v. Brown*, 4 Vet. App. 528 (1993) (consolidated with *Contreras v. Brown*, No. 91–990 and *Powell v. Brown*, No. 91–998) (en banc) (hereinafter *Contreras*). On January 12, 1993, the Secretary of Veterans Affairs (Secretary) filed a post-argument memorandum of law and a motion to dismiss for lack of jurisdiction, to which appellant filed an opposition on January 26, 1993. In light of this Court's *Contreras* decision, we conclude that appellant's March 30, 1989, NOD is valid, and

that we have jurisdiction to resolve the merits of appellant's claim. 38 U.S.C.A. § 7252(a) (West 1991). The Court finds error in the BVA's determination that appellant's hypertension was not secondarily related to his PTSD. The Court will vacate the October 2, 1991, BVA decision and remand the matter for readjudication.

## I. Background

Appellant served honorably in the United States Army from February 15, 1943, until September 21, 1945 (R. at 19, 45), and was a prisoner of war (POW) of the German government from September 14, 1944, until April 20, 1945. R. at 34–35. In 1950, the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) awarded appellant a 0% (noncompensable) disability evaluation for an anxiety neurosis (*see* R. at 68), which the RO defined as PTSD and increased to 10% disabling on July 8, 1985. R. at 65–66. On October 28, 1986, the RO confirmed and continued the July 1985, rating decision, and informed appellant of this decision in a November 28, 1986, letter. *See* R. at 69. Appellant filed an NOD on January 13, 1987; the VA issued a Statement of the Case on April 29, 1987 (R. at 67–71); and appellant perfected his appeal to the Board the following October. R. at 190–95. Appellant attached a four-page personal statement to his VA Form 1–9 in which he raised, for the first time, the issue of entitlement to service connection for hypertension as secondary to his service-connected PTSD: "From date of discharge, I was service[-]connected rated [sic] for anxiety. The high blood pressure and hypertension I feel is an outgrowth of that anxiety." R. at 194.

In December 22, 1988, the Board recognized that the RO had not adjudicated appellant's claim that his hypertension was the result of, or related to, his service-connected PTSD:

> . . . [I]n developing the case, the agency of original jurisdiction does not appear to have considered entitlement to service connection [for hypertension] on a secondary basis and the veteran has not

been provided with the applicable law and regulations pertaining thereto. Accordingly, it is the judgment of the Board that the case should be REMANDED to the agency of original jurisdiction so that consideration may be given to secondary service connection for hypertension.

R. at 204. In compliance with the Board's December 1988 remand, the RO adjudicated appellant's claim of entitlement to service connection for hypertension secondary to his service-connected PTSD (secondary service connection). On January 12, 1989, the RO denied appellant's claim after determining that his hypertension had no etiological relationship to his service-connected PTSD, but found that appellant's PTSD had increased in severity, and awarded him a 30% disability rating, presently in effect. R. at 209. Appellant filed an NOD with respect to the denial of his claim of entitlement to secondary service connection on March 30, 1989. R. at 215.

## II. Jurisdictional Issue

■ Before reaching the merits of appellant's claims, the issue of whether the Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) must be resolved. As established by the Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.A. § 7251 note (West 1991)), this Court has jurisdiction only over cases in which an NOD was filed on or after November 18, 1988. We find that the Court's decision in *Contreras, supra,* governs the jurisdictional issue in this case. In *Contreras,* we held that in order for an NOD to be valid for jurisdictional purposes, the NOD must have been filed after the November 18, 1988, delimiting date, and in response to the *initial* RO adjudication of an issue. Slip op. at 22. On page one of the October 2, 1991, decision, the Board framed the issue on appeal as one for entitlement to service connection for hypertension, but in the CONTENTIONS section on the following page, stated that the issue was one of entitlement to service connection for hypertension secondary to appellant's PTSD. *Charles J. Perman,* BVA 91–32631, at 1–2 (Oct. 2, 1991). In his Motion to Dismiss, the Secretary argues that appellant's original claim of entitlement to service connection for hypertension and his later claim of entitlement to service connection for hypertension as secondary to his service-connected PTSD are one and the same. Mot. at 3–4. We disagree, and find that these are two separate and distinct claims. Appellant's claim on appeal is one for entitlement to service connection for hypertension *secondary* to his service-connected PTSD. The Board's December 22, 1988, remand "so that consideration may be given to secondary service connection for hypertension" leaves no room for dispute regarding the classification of the claim currently before the Court. Subsequent to the BVA remand instructions, the RO adjudicated appellant's claim for hypertension as secondary to his service-connected PTSD for the first time on January 12, 1989; thus, the Secretary's argument that appellant filed an NOD with respect to this issue at any time prior to this date fails under *Contreras, supra.* Appellant's March 30, 1989, NOD is valid for the purpose of bestowing jurisdiction on this Court. The jurisdictional issue having been resolved, we now turn to the merits of appellant's claim.

## III. Hypertension as Secondary to Service–Connected PTSD

The evidence of record which addresses the question of whether appellant's hypertension may be secondarily related to appellant's service-connected PTSD includes opinions rendered by Drs. Gerald Lieberman, George A. Beller, and Lawrence R. Moss. R. at 235, 264; Supplemental R. at 1–10. In a report dated July 28, 1989, Dr. Moss stated that he had conducted a review of medical literature to determine whether a possible causal connection existed between appellant's POW experience, his service-connected PTSD and his subsequent development of hypertension. Supplemental R. at 1–10. Dr. Moss summarized the findings of the medical sources which formed the basis of his report, and reached the following conclusions: that psychosocial stress plays an important causative

role in all hypertension; that because of his PTSD, appellant was at an increased risk for developing hypertension; and that the starvation appellant endured as a POW may alone have increased his susceptibility to the eventual development of hypertension. *Id.* at 9. Dr. Moss opined that appellant was

> responding physiologically to stress, not just during his term of imprisonment, but probably nearly daily for the next 30 years by virtue of his symptoms of [PTSD].... [W]hat may appear to be a disconnected, future manifestation of a past trauma may indeed represent something quite different, i.e., the cumulative effect of decades of stress and the body's response to it.

*Id.* With respect to this same issue, Dr. Lieberman, appellant's treating physician, opined that "chronic emotional disturbance secondary to the [PTSD] is a significant factor responsible for [appellant's] hypertension." R. at 235. On February 8, 1990, an RO Adjudication Officer requested an Independent Medical Opinion, noting that appellant had submitted

> a paper written by Dr. Lawrence R. Moss which purports to be a survey of the medical literature on the development of hypertension in persons who suffer from PTSD....
> We believe that the veteran has submitted sufficient evidence to support further study of his contentions. We therefore request that this claim file be submitted for an independent medical opinion on the causal relationship, if any, between PTSD and hypertension.

R. at 240–41.

In January 1991, then BVA Chairman Kenneth E. Eaton referred appellant's case to Dr. Beller for the purpose of obtaining an independent medical expert opinion with respect to appellant's claim that his hypertension was secondarily related to his service-connected PTSD. R. at 261. Mr. Eaton apprised Dr. Beller of appellant's military service, his POW experience, and his current service-connected PTSD. Mr. Eaton also informed Dr. Beller that appellant's claims folder included private medical opinions which discussed the possibility of a causal relationship between PTSD and the subsequent development of hypertension. Mr. Eaton requested that Dr. Beller respond to the question of whether there exists

> a proximate, causal relationship between the veteran's emotional stress and his resultant development of [PTSD], and his later development of hypertension?

*Id.* In his March 14, 1991, response, Dr. Beller acknowledged the severity of the emotional stress to which appellant had been exposed during his POW captivity, and proffered his opinion regarding the question of whether this stress could culminate in hypertension years later:

> ... The medical literature is inconclusive concerning whether or not acute emotional stress can promote the development of sustained hypertension. We know that acute stress can result in acute elevations of blood pressure, but when the stress has resolved there is little conclusive evidence that the hypertension remains sustained.... Whether emotional stress or [PTSD] can be solely causative of sustained hypertension in absence of other genetic or environmental conditions is open to question.
>
> ....
>
> In the process of rendering my opinion concerning this case, I did consult with the head of our hypertension unit. Without identifying the subject, I did ask him whether or not he knew of any conclusive evidence of the causative nature of [PTSD] and late development of hypertension. He mentioned that there had been no concrete well performed studies on [PTSD] and subsequent development of hypertension. However, this specialist did not exclude the possibility that a causative relationship might exist. It is just that the clinical investigative evidence in the literature is not definitive in this regard.
>
> In summary, I am sorry that I cannot come up with an absolute opinion which would provide you with a "yes" or "no" response to the question posed. It certainly may be the case that severe in-

tense stress, as experienced by [appellant] could contribute to pathophysiologic changes in the cardiovascular system that would lead to the ultimate development of hypertension. However, at the present time, this can only be speculative without any more concrete evidence.

R. at 264.

On October 2, 1991, the Board found that "[H]ypertension is not shown to have developed as the direct result of the veteran's service-connected [PTSD]." *Perman*, BVA 91–32631, at 5. The Board acknowledged the presence of studies which indicated that a causal connection existed between appellant's service-connected PTSD and the onset of hypertension, but determined that current medical opinion is "inconclusive" and that the opinions of Drs. Moss and Lieberman stating otherwise were "not the prevailing view of the medical community." *Id.* at 4. The Board instead found that Dr. Beller's opinion (which stated that he could not provide a definitive answer to the question of whether appellant's PTSD may have caused his hypertension) caused the balance of negative and positive evidence to weigh more heavily against appellant's claim.

## IV. Analysis

■ In the instant case, the evidence of record which pertains to the question of whether appellant's hypertension may be a secondary result of his service-connected PTSD, consists of three medical opinions, two of which (Dr. Lieberman's and Dr. Moss') state that a causal connection exists between appellant's service-connected PTSD and his hypertension (R. at 235; Supplemental R. at 2–9), and the third (Dr. Beller's) which states that he is unable to provide a definite answer. R. at 264. Drs. Moss and Beller both agree that empirical studies are lacking regarding the question of whether appellant's service-connected PTSD has caused his hypertension. While Dr. Moss acknowledges that "there have been insufficient well-controlled prospective studies of the long-term medical consequences of acute and prolonged psychosocial stress," his report addresses the available data on the subject, in addition to evaluating recent data pertaining to this issue (Supplemental R. at 8); Dr. Beller merely states that "the medical literature is inconclusive" without supporting this conclusion with any kind of analysis, before ultimately declining to answer the question whether appellant's PTSD caused his hypertension. R. at 264.

In *Tirpak v. Derwinski*, 2 Vet.App. 609 (1992), the Court held that a physician's statement that a veteran *may or may not* have died if a specific medical procedure had been successful was not evidence sufficient to justify that the veteran's widow had submitted a well grounded claim. *Id.* at 610–11. Although appellant's having submitted a well grounded claim is not an issue here, upon a review of the evidence in this case, the Court reaches a similar conclusion with respect to Dr. Beller's expert opinion. The VA requested that Dr. Beller give an opinion as to "whether a proximate, causal relationship existed between this veteran's emotional stress, his resultant development of [PTSD], and his later development of hypertension." R. at 261. By responding "[I]n summary, I am sorry that I cannot come up with an absolute opinion which would provide you with a 'yes' or 'no' response to the question posed" (R. at 264), Dr. Beller, in essence, did not render an opinion on this issue, and his remarks constitute what may be characterized as "non-evidence." *See Sklar v. Brown*, 5 Vet.App. 140, 145–46 (1993); *Kates v. Brown*, 5 Vet.App. 93, 95 (1993); *Tirpak*, *supra*.

■ Both before and after the VA's receipt of Dr. Beller's expert medical opinion regarding the question of whether appellant's service-connected PTSD may have caused his hypertension, the sole evidence of record on this issue consisted of the medical opinions of Drs. Moss and Lieberman, both of which the Board implicitly rejected. Because the Board is required to include an analysis of the credibility or probative value of the evidence submitted by and on behalf of appellant, and failed to do so with respect to the opinions of Drs. Moss and Lieberman, a remand is necessary. Moreover, the Board erred in ne-

glecting to include reasons or bases for its implicit finding that appellant is not entitled to the "benefit of the doubt" under 38 U.S.C.A. § 5107(b) (West 1991). On remand, the Board will have the opportunity to remedy these shortcomings by readjudicating appellant's claim and by providing sufficient reasons or bases for all findings and conclusions. *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); 38 U.S.C.A. §§ 5107(b), 7104(d) (West 1991).

### V. Conclusion

After review of the record, appellant's brief, and the Secretary's motion for summary affirmance, the Court holds that the October 2, 1991, Board decision must be VACATED and the matter REMANDED for readjudication consistent with this opinion. "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991).