# United States Court of Appeals for the Federal Circuit

2008-7112

TIMOTHY W. FAGAN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Kathleen A. Daley, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for claimant-appellant. With her on the brief was J. Michael Jakes.

Jane W. Vanneman, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Martin J. Sendek, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Mary J. Schoelen

# United States Court of Appeals for the Federal Circuit

2008-7112

TIMOTHY W. FAGAN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI,
Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in
No. 06-1327, Judge Mary J. Schoelen.

_____

DECIDED:  July 22, 2009

_____

Before MICHEL, Chief Judge, SCHALL and LINN, Circuit Judges.

SCHALL, Circuit Judge.

Timothy W. Fagan seeks reversal of the decision of the United States Court of
Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans'
Appeals ("Board's") denial of his claim for service connection benefits for bilateral
hearing loss. Fagan v. Peake, No. 06-1327, 2008 WL 2130166 (Vet. App. Feb. 29,
2008) (unpublished table decision) ("Veterans Court Decision"). Mr. Fagan argues that
the Veterans Court incorrectly interpreted the benefit of the doubt doctrine codified at 38
U.S.C. § 5107(b) and, as a result, improperly failed to consider statements in a medical

examiner's report as "evidence."  Because the Veterans Court did not misinterpret § 5107(b), we affirm.

BACKGROUND

I.

Mr. Fagan served on active duty in the U.S. Marine Corps from September 1968 to August 1970.  Prior to entering service, he was exposed to loud noise from recreational hunting.  Upon entering service, Mr. Fagan was given two audiogram tests, both of which revealed that he had "moderately severe" hearing loss in his left ear.[1]  During his service in Vietnam, Mr. Fagan was further exposed to loud noise, specifically, from explosions, airplanes, helicopters, and wind.  There is no evidence, however, that Mr. Fagan complained of hearing problems or requested treatment for hearing loss during service.  Upon exiting service, Mr. Fagan was not administered another audiometric hearing test because an audiometer was not available.  Rather, he was administered a "whispered voice" test, which indicated that he did not suffer from hearing loss in either ear, even though his pre-service audiogram test indicated preexisting left ear hearing loss.

After discharge in 1970, Mr. Fagan continued to participate in activities involving loud noise, such as hunting, and using weed eaters, leaf blowers, and chainsaws.  Although exposed to loud noise during these activities, Mr. Fagan did not wear hearing protection until approximately 2002.  Mr. Fagan testified that he failed a hearing test, "in one or both ears," when he attempted to enter the Connecticut Army National Guard in

---

[1] Because Mr. Fagan's entrance examination noted hearing loss, it is undisputed that he is not entitled to a presumption of sound condition pursuant to 38 U.S.C. § 1111.

1971 or 1972.  There is no further evidence of this hearing test, however, despite the Veterans' Administration ("VA") Regional Office's ("RO") attempts to recover the relevant records from the Connecticut Adjutant General's Office and the National Personnel Records Center.  Mr. Fagan further testified that he was tested a second time and was subsequently admitted to the Connecticut Army National Guard.  There is no evidence of private treatment records related to Mr. Fagan's hearing loss.  Except for lay statements made in 2004 from friends and relatives about their past recollection of Mr. Fagan's hearing ability, there is no other evidence related to his hearing loss until 2002, when he underwent a medical examination.

## II.

In 2002, Mr. Fagan filed his claim with the RO for service connection relating to bilateral hearing loss.  The VA examined Mr. Fagan on October 15, 2003, which confirmed that he has bilateral hearing loss.  During Mr. Fagan's VA medical examination, the medical examiner noted his in-service and post-service noise exposure, as well as testimony from his relatives concerning hearing loss.  The examiner also acknowledged that, although Mr. Fagan did not exhibit signs of hearing loss during the "whisper" test at discharge from the military, a "'whisper' test does not provide frequency or ear specific information and therefore does not rule out, or confirm, high frequency hearing loss."  The examiner concluded that

> [d]ue to the veteran's history of post-military noise exposure, and without audiometric information obtained at the time of his release from service or shortly thereafter, it is not possible to determine if the further decrease in high frequencies for the left ear and the high frequency hearing loss in the right ear is related to military service.

On December 17, 2003, the VA denied Mr. Fagan's claim, determining that his further hearing loss was not service connected.

Mr. Fagan appealed to the Board in February 2004. On January 5, 2006, the Board denied his claim for service connection. Fagan v. Peake, Docket No. 04-34 385 (Bd. Vet. App. Jan. 5, 2006) ("Board Decision"). In its decision, the Board explicitly considered the testimony from Mr. Fagan's relatives, the occurrences of loud noise exposure during service, and Mr. Fagan's testimony about failing a Connecticut Army National Guard hearing test shortly after leaving the service. Id., slip op. at 7–8. The Board also took into account, however, (i) that "there is no medical evidence from either his period of service or shortly thereafter showing that [Mr. Fagan] sustained any loss of hearing acuity in service," (ii) the fact that the earliest post-service record of hearing loss was thirty years after Mr. Fagan's discharge, and (iii) that Mr. Fagan "had not previously sought treatment for his hearing loss with either the VA or a private medical provider" until 2002. Id. at 8. Ultimately, the Board concluded that, "after considering all the evidence[,] . . . the preponderance of the evidence [was] against [Mr. Fagan's] claim" and that "the greater weight of the evidence [was] against the conclusion that the criteria to establish service connection [were] met." Id. at 9.

Mr. Fagan appealed to the Veterans Court, arguing that the positive and negative evidence pertaining to a nexus between his further hearing loss and service was in equipoise and, therefore, the "Board was required to grant Mr. Fagan the benefit of the doubt" pursuant to § 5107(b). See Veterans Court Decision, 2008 WL 2130166, at *2. On February 29, 2008, the Veterans Court rejected Mr. Fagan's argument and affirmed the decision of the Board. Id. at *1. In doing so, the court first pointed out that, because the Board correctly found that Mr. Fagan's hearing loss constituted a current compensable disability, the sole issue was whether there was sufficient evidence

establishing "a nexus between his current hearing disability and an injury, event, or disease in service." Id. at *2. In that regard, the court stated that "[t]his appeal presents a single question—the interpretation and application of the benefit of the doubt doctrine codified at 38 U.S.C. § 5107(b)." Id. at *1. The court then enumerated the pertinent evidence, such as Mr. Fagan's pre- and post-service hearing tests, his pre- and post-service exposure to noise, and the VA medical examiner's report. Id. at *1–2. Regarding the VA medical examiner's statements about being unable to determine whether Mr. Fagan's further hearing loss was related to military service, the court stated that "the examiner did not render an opinion and her remarks constitute what may be characterized as 'non-evidence.'" Id. at *3 (internal quotations marks omitted) (quoting Perman v. Brown, 5 Vet. App. 237, 241 (1993)). Thus, the Veterans Court did not find sufficient evidence linking Mr. Fagan's further bilateral hearing loss to service and, consequently, ruled that the evidence regarding a nexus was not in equipoise. Veterans Court Decision, 2008 WL 2130166, at *3. Accordingly, the court held that the benefit-of-the-doubt doctrine was inapplicable. Id.

## DISCUSSION

### I.

On appeal, Mr. Fagan argues that the Veterans Court "erred as a matter of law in interpreting 'evidence' in § 5107(b) too narrowly" and, as a result, improperly excluded the evidence in the VA medical examiner's report. See Appellant's Br. 13. Responding, the government contends that the Veterans Court did not interpret § 5107(b) to bar relevant evidence. Rather, it merely found, after considering all pertinent evidence, that

2008-7112             5

the benefit-of-the-doubt doctrine was not applicable because the evidence for and against Mr. Fagan was not in equipoise.

Pursuant to 38 U.S.C. § 7292(c), we have limited jurisdiction to review decisions of the Veterans Court. Boggs v. Peake, 520 F.3d 1330, 1333 (Fed. Cir. 2008). Specifically, we possess "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). We also have jurisdiction to review decisions of the Veterans Court on issues of law. Jordan v. Nicholson, 401 F.3d 1296, 1297 (Fed. Cir. 2005). However, "[e]xcept to the extent that an appeal . . . presents a constitutional issue, [we] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). Thus, we only have jurisdiction over Mr. Fagan's appeal to the extent that it raises issues of law. To the extent that his appeal raises issues of fact or issues of law applied to fact, we do not have jurisdiction to consider his claims.

In considering any issues of law properly raised on appeal, we review de novo the decision of the Veterans Court. See Boggs, 520 F.3d at 1334; Summers v. Gober, 225 F.3d 1293, 1295 (Fed. Cir. 2000). We set aside the Veterans Court's interpretations of a regulation if they are found to be "(a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (d) without observance of procedure required by law." 38 U.S.C. § 7292(d)(1).

This appeal does not simply present a challenge to factual findings or to the law as applied to the facts. Rather, at least in part, it challenges the Veterans Court's interpretation of a statutory provision, 38 U.S.C. § 5107(b). Indeed, the Veterans Court itself acknowledged that "[t]his appeal presents a single question—the interpretation and application of the benefit of the doubt doctrine codified at 38 U.S.C. § 5107(b)." Veterans Court Decision, 2008 WL 2130166, at *1 (emphasis added). Thus, we have jurisdiction to hear Mr. Fagan's appeal.

II.

We now turn to the merits of Mr. Fagan's appeal. "[A] claimant has the responsibility to present and support a claim for [VA] benefits . . . ." 38 U.S.C. § 5107(a); see Cromer v. Nicholson, 455 F.3d 1346, 1350 (Fed. Cir. 2006) ("[T]he general evidentiary burden in veterans' benefit cases . . . requires that 'a claimant has the responsibility to present and support a claim for [VA] benefits.'" (alteration in original) (quoting 38 U.S.C. § 5107(a))). Generally, "[t]o establish a right to compensation for a present disability, a veteran must show: '(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service'—the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)); see, e.g., Hogan v. Peake, 544 F.3d 1295, 1297 (Fed. Cir. 2008) ("[A] veteran must show that the current disability is 'service connected,' i.e., that there is a medical nexus between the disability and an 'in-service precipitating disease, injury or event.'" (quoting Disabled Am. Veterans v. Sec'y of Veterans Affairs, 419 F.3d 1317,

1318 (Fed. Cir. 2005)). In this case, the only requisite element for service connection which is disputed is the "so-called nexus requirement."

It is the veteran's "general evidentiary burden" to establish all elements of his claim, including the nexus requirement. See, e.g., Holton, 557 F.3d at 1368; Hogan, 544 F.3d at 1297; Cromer, 455 F.3d at 1350. However, by statute and regulation, the veteran is given the "benefit of the doubt" "regarding any issue material" to the veteran's claim "when there is an approximate balance of positive and negative evidence." 38 U.S.C. § 5107(b). The "benefit of the doubt" doctrine is codified at 38 U.S.C. § 5107(b), which provides as follows:

> The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

The doctrine, however, is not applicable based on "pure speculation or remote possibility" and "is not a means of reconciling actual conflict or a contradiction in the

evidence." 38 C.F.R. § 3.102.[2]   In addition, the "benefit of the doubt" doctrine has "no application where the Board determines that the preponderance of the evidence weighs against the veteran's claim" or when the evidence is not in "equipoise." Ortiz v. Principi, 274 F.3d 1361, 1366 (Fed. Cir. 2001); see, e.g., Ferguson v. Principi, 273 F.3d 1072, 1075 (Fed. Cir. 2001) ("Thus the evidence was not in equipoise but rather preponderated against [the veteran's] claim.   Therefore, the benefit-of-the-doubt doctrine was not applicable."). Rather, it applies when the evidence is in "approximate balance" or "almost exactly equal."   Ortiz, 274 F.3d at 1364 ("[E]vidence is in 'approximate balance' when the evidence in favor of and opposing the veteran's claim is found to be 'almost exact[ly or] nearly' equal." (alteration in original)).

In determining whether a veteran has sufficiently supported a claim for benefits, and similarly whether the benefit of the doubt doctrine applies, statutes and regulations

---

[2]    38 C.F.R. § 3.102, the implementing regulation for the "benefit of the doubt" doctrine, provides:

> It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case.  When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant.  By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim.  It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence.  Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine.  The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

require consideration of "the entire evidence of record," 38 C.F.R. 3.303(a), including "all pertinent medical and lay evidence," id., and "all procurable and assembled data," 38 C.F.R. 3.102. See generally 38 U.S.C. § 5107(b). We have repeatedly emphasized that all pertinent evidence must be considered. See, e.g., Hogan, 544 F.3d at 1298 ("A determination regarding service connection requires consideration of 'all pertinent medical and lay evidence,' including medical opinions that do not state definitively when a particular disorder or condition began." (citation omitted)); Capellan v. Peake, 539 F.3d 1373, 1382 (Fed. Cir. 2008) (explaining that 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102 "explicitly require the consideration of all evidence"); Groves v. Peake, 524 F.3d 1306, 1309 (Fed. Cir. 2008) (determining service connection requires review of the entire evidence of record, including all pertinent medical and lay evidence); Jandreau v. Nicholson, 492 F.3d 1372, 1376–77 & n.4 (Fed. Cir. 2007) (ruling that lay evidence, by itself, may be "competent and sufficient" in some circumstances to establish the presence of a condition).

## III.

It is in regard to the evidence that was considered in determining whether § 5107(b) should have been applied to the nexus requirement that Mr. Fagan argues the Veterans Court erred. Mr. Fagan contends that the Veterans Court erroneously interpreted "evidence" in § 5107(b) to only include definitive medical opinions and, thus, dismissed the VA medical examiner's report from relevant evidence because the examiner was unable to come to a definitive medical opinion. As noted, the examiner stated: "[I]t is not possible to determine if" Mr. Fagan's further hearing loss "is related to military service." Mr. Fagan also contends that the Veterans Court erred in its

interpretation of § 5107(b) by failing to consider any of the evidence he submitted that was discussed in the medical examiner's report, such as occurrences of in-service noise exposure. Mr. Fagan suggests that, if the Veterans Court had considered the remarks and evidence noted in the examiner's report, the evidence would have been in "equipoise" and he would have been entitled to veteran's benefits because § 5107(b) would have applied.

We are unable to agree with Mr. Fagan that the Veterans Court misinterpreted the benefit of the doubt rule of § 5107(b). First, we do not think that the court adopted a rule—either explicitly or implicitly—permitting the exclusion of all submitted evidence that is discussed in a medical examiner's report, unless that report provides a definitive, conclusive opinion. Significantly, when the Veterans Court referred to the examiner's "remarks" as "non-evidence," it merely was referring to the examiner's statement that

she was unable to render an opinion. The court was not referring to all of the evidence and "remarks" contained in the report and the record as "non-evidence."[3]

The Board assessed the VA medical examiner's report, as well as the evidence contained therein, but determined that the preponderance of evidence weighed against service connection. This determination took into account that the examiner did not state that Mr. Fagan's hearing loss likely resulted from service, as well as the extensive evidence that his further hearing loss was not a result of service. Such evidence included his extensive post-service noise exposure without hearing protection and the lack of treatment for hearing loss or complaints of hearing loss until thirty years after service. See, e.g., Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (permitting consideration of the "the lengthy period of absence of complaint directed to the condition [the veteran] now raises"). Under these circumstances, the Board found the "benefit of the doubt" doctrine was inapplicable. See, e.g., Ortiz, 274 F.3d at 1365 ("A

---

[3]        As seen, in referring to the VA medical examiner's "remarks" as "non-evidence," the Veterans Court cited to its decision in Perman. In Perman, the veteran submitted evidence and, thereafter, three medical examiners offered opinions about service connection based upon the evidence. 5 Vet. App. at 239–41. Two of the examiners opined that the evidence supported service connection, but the third examiner could not come to an "absolute opinion." Id. at 240–41. The Board denied the veteran's claim, after determining that the only evidence that could possibly be considered "negative"—i.e., the statement by the third examiner that he was incapable of providing an "absolute opinion"—"caused the balance of negative and positive evidence to weigh more heavily against" service connection. Id. at 241. The Veterans Court vacated the Board's decision. Significantly, it ruled that, in light of the positive evidence submitted by the veteran and the two medical opinions supporting service connection, it was unexplainable how one medical examiner's inconclusive statement in isolation—a remark that was essentially "non-evidence"—could weigh heavily enough to deny service connection. Id. Thus, because the Veterans Court in Perman considered the entire record evidence, including the material submitted by the veteran, it is clear that the Veterans Court in Perman simply referred to the examiner's inconclusive statement alone as "non-evidence."

finding that a 'preponderance of the evidence' leads to a determination . . . is quite different from the situation in which the contrary evidence is 'nearly equal' or 'too close to call.'").

Subsequently, in affirming the Board's decision declining to apply § 5107(b), the Veterans Court took into account the entirety of the evidence submitted by Mr. Fagan. Doing so, it properly decided that Mr. Fagan could not benefit from § 5107(b) because the preponderance of evidence weighed against a nexus. See, e.g., Ferguson, 273 F.3d at 1076 (finding no erroneous interpretation of § 5107(b) where the Veterans Court affirmed the Board, which "considered all the evidence, then determined that the requirement that there be 'an approximate balance of positive and negative evidence' was not met"). Tellingly, in its opinion the Veterans Court cited the same evidence upon which the Board relied. That evidence included Mr. Fagan's hearing tests, his pre- and post-service exposure to noise, and the examiner's inability to render a decision regarding service connection. See Veterans Court Decision, 2008 WL 2130166, at *1–2. In fact, the court recited all of this evidence despite the fact that it explicitly explained that "the facts [were] undisputed and need only be summarized briefly." Id. at *1. Thus, although the Veterans Court characterized the VA medical examiner's remarks as "non-evidence," it did not fail to consider any relevant evidence on the question of nexus.

Neither do we think that the Veterans Court erred as a matter of law when it treated as "non-evidence" or not pertinent the VA medical examiner's statement that it was "not possible to determine if the further decrease in high frequencies for the left ear and the high frequency hearing loss in the right ear is related to military service." The examiner's statement, which recites the inability to come to an opinion, provides neither

positive nor negative support for service connection. See 38 U.S.C. § 5107(b) (balancing "positive and negative evidence"). Therefore, it is not pertinent evidence, one way or the other, regarding service connection. Indeed, we considered, and rejected, a similar contention in Hogan. There, the veteran argued that it was error to refer to a medical examiner's report, which was unable to conclusively provide a medical opinion regarding service connection, as "non-evidence." 544 F.3d at 1297. We concluded, however, that the Veterans Court did not disregard any pertinent evidence of record when it referred to the medical examiner's report as "non-evidence." Id. at 1297–98. Instead, because the report did not state that the veteran's disability was likely service connected, and because "there was substantial evidence showing that [the veteran's disability] did not begin until after he left military service," we stated that the report was "insufficient to establish service connection."[4] Id. at 1298.

## CONCLUSION

For the foregoing reasons, we find no error in the Veterans Court's interpretation of 38 U.S.C. § 5107(b). To the extent Mr. Fagan argues that there is insufficient evidence supporting the denial of his claim, he presents an issue beyond our jurisdiction. See, e.g., Maxson, 230 F.3d at 1333 ("The weighing of this evidence is not within our appellate jurisdiction."). The decision of the Veterans Court is affirmed.

---

[4] However, we note—as we did in Hogan—that it is "troubling" to refer to statements as "non-evidence." Hogan, 544 F.3d at 1297 ("the opinion of the Veterans Court contains some troubling language"). Reiterating what we said in Hogan, "[a] determination regarding service connection requires consideration of 'all pertinent medical and lay evidence.'" Id. at 1298 (quoting 38 C.F.R. § 3.303(a)). Regardless of whether an ultimate opinion is offered in a medical examiner's report, that report, as well as the facts discussed therein, "regarding the etiology of a claimant's [disability] must be considered as 'evidence' of whether the [disability] was incurred in service." Id. As explained above, in this case, the Veterans Court neither adopted a restricted view of "evidence" in § 5107(b) nor failed to consider any pertinent evidence.

## COSTS

Each party shall bear its own costs.

## <u>AFFIRMED</u>