Citation Nr: 1443644 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 10-316 18A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to service connection for residuals of fractures of bilateral wrists, to include as secondary to service-connected posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Oklahoma Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Carole Kammel, Counsel

INTRODUCTION

The Veteran had active service from April 1965 to November 1966.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2010 rating decision of the above Regional Office (RO) of the Department of Veterans Affairs (VA). By that rating action, the RO denied entitlement to service connection for fracture, bilateral wrists. The Veteran appealed the RO's determination to the Board. 

In March 2011, the Veteran testified before the undersigned Acting Veterans Law Judge during a Travel Board hearing held at the RO. The transcript of that hearing is associated with the Veteran's electronic claims files. At the hearing, the Veteran submitted a private medical statement, along with a written waiver of initial review by the AOJ (agency of original jurisdiction). That evidence is also associated with the electronic records. 

In February 2014, the Board Remanded the matter on appeal to the RO for additional substantive development. The requested development has been completed and the matter has returned to the Board for appellate consideration. 


FINDING OF FACT

A chronic bilateral wrist disability was not diagnosed or treated in service, and the evidence establishes that it is less than likely that a post-service MVA in which the Veteran incurred a current bilateral wrist fracture disability was caused or aggravated by his service-connected PTSD. 


CONCLUSION OF LAW

Residuals of fractures of the wrists were not incurred in service and are not causally related to or aggravated by service-connected PTSD. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a).

Proper notice from VA must inform the claimant and his representative, if any, prior to the initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ) of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). These notice requirements apply to all five elements of a service-connection claim (Veteran status, existence of a disability, a connection between the Veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id. 

Neither the Veteran nor his representative has alleged prejudice with respect to notice. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. In a January 2010 letter, the RO notified the Veteran of the criteria for establishing service connection on direct and secondary service connection bases, the evidence required in this regard, and his and VA's respective duties for obtaining evidence. He also was notified of how VA determines disability ratings and effective dates if service connection is awarded. Nothing more was required. 

VA also fulfilled its duty to assist the Veteran by obtaining all relevant evidence in support of the claim on appeal. The RO obtained his service treatment and VA treatment records, as well as private treatment clinicians' opinions. No outstanding evidence has been identified that has not otherwise been obtained and associated with the Veteran's Veterans Benefits Management System (VBMS) electronic claims file. 

VA opinions with respect to the issue on appeal were obtained in September 2010. (See VA September 2010 VA orthopedic and PTSD examination reports). 38 C.F.R. § 3.159(c)(4). To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA opinions obtained in this case, when viewed collectively, are more than adequate. The opinions were predicated on a full understanding of the Veteran's medical history, consideration of the Veteran's lay assertions, review of the record, and physical and mental examinations and provided a sufficient evidentiary basis for the claim for service connection for residuals of bilateral wrist fractures, to include on a secondary basis to be adjudicated. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met.

In addition, in February 2014, the Board remanded the Veteran's claim to afford the Veteran an opportunity to submit private hospitalization and emergency treatment records, to include those from Brackenridge Hospital or Seaton Healthcare Network surrounding a July 2009 motor vehicle accident (MVA), or any other alternative records about the MVA that resulted in his bilateral wrist injuries, such as insurance records, statements of witnesses, and records obtained for purposes of medical insurance or reimbursement. (See February 2014 Board remand). 

In a March 2014 letter, the RO requested that the Veteran submit any of the above-cited private treatment records that were in his possession, or, in the alternative, to fill out an authorization form (VA Form 21-4142) that would allow VA to obtain the outstanding records. The Veteran did not respond to the RO's March 2014 letter. The directed development has been completed to the extent possible. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002). 

Some discussion of the Veteran's hearing before the undersigned is necessary. The individual presiding over a hearing must comply with the duties set forth in 38 C.F.R. § 3.103(c)(2). Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) fully explaining the issues and (2) suggesting the submission of evidence that may have been overlooked. They were met here during the March 2011 hearing before the undersigned. The issue on appeal (service connection) was identified at the Board hearing. Information was also elicited from the Veteran concerning the onset of his bilateral wrist disabilities, when he was initially diagnosed, as well as the manner this condition is felt to be related to his service-connected PTSD. 

In light of the foregoing, the Board concludes that all the available records and medical evidence has been obtained in order to make an adequate determination as to the claim for service connection for residuals of bilateral wrist fractures, to include as secondary to service-connected PTSD such that no further notice or assistance is required to fulfill VA's duty to assist in the development of this claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001). VA has complied with the duty-to-assist requirements. 38 U.S.C.A. § 5103A.

II. Facts and Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Establishing service connection on the basis that a disease or injury was actually incurred in or as a direct result of service generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). 

The Veteran seeks service connection for residuals of a fracture of the wrists, to include as secondary to his service-connected PTSD. The facts show, and the Veteran contends, that his bilateral wrist injuries are the result of a July 4, 2009 MVA. The Veteran contends that the wrist injuries were caused or aggravated by decreased alertness and a panic attack due to service-connected PTSD. (See VA Form 21-4138, Statement in Support of Claim, dated and signed by the Veteran in January 2010). 

In addition, certain chronic diseases, such as arthritis, may be presumed to have been incurred during service if they become manifested to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1110, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309; see also 67 Fed. Reg. 67792 -67793 (Nov. 7, 2002). The Veteran does not contend, nor does the evidence suggest, that the wrist disabilities at issue were manifested within one year following his service. The evidence is clear that the wrist disabilities at issue arose in 2009, some 30 years after the Veteran's service separation. No further discussion of this theory of service connection is required, given the facts of this case. 

If there is at least an approximate balance of positive and negative evidence regarding any issue material to the claim, the claimant shall be given the benefit of the doubt in resolving each such issue. 38 U.S.C.A. § 5107; Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); 38 C.F.R. §§ 3.102. On the other hand, if the Board determines that the preponderance of the evidence is against the claim, it has necessarily found that the evidence is not in approximate balance, and the benefit of the doubt rule is not applicable. Ortiz, 274 F.3d at 1365. 

It is undisputed that the Veteran sustained injuries to both wrists on July 4, 2009. As clarified at his March 2011 hearing before the undersigned, the Veteran does not contend that he sustained an injury to either wrist in service or as a direct result of service, but, rather, contends only that he incurred wrist fractures as a result of a service connection disability. Nevertheless, the Board has reviewed the record to determine whether there is any evidence that the Veteran incurred a current wrist disability in service. 

The Veteran's service treatment records are wholly devoid of any subjective complaints or clinical findings of any wrist disability. A July 1966 service discharge examination report reflects that the Veteran's upper extremities were evaluated as "normal." On an accompanying Report of Medical History, the Veteran denied having had arthritis, and any other bone or joint deformity. 

In addition, no private or VA clinician has provided a nexus between the Veteran's residuals of bilateral wrist fractures and his period of military service, and the Veteran does not contend otherwise. There is also no objective evidence that the Veteran was diagnosed as having arthritis of either wrist within one year of his service discharge. The Board finds no evidence that bilateral wrist fracture residuals were incurred during or as a direct result of the Veteran's service. 

The Board will next consider the Veteran's contention that that his bilateral wrist injuries are the result of an MVA caused by decreased alertness and panic attack as a result of his service-connected PTSD. (See VA Form 21-4138, Statement in Support of Claim, dated and signed by the Veteran in January 2010). The Veteran contends, in essences, that the bilateral wrist fractures would not have occurred or would have been less severe if not for the Veteran's service-connected PTSD. 

Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. 38 C.F.R. § 3.310, Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Where a service-connected disability aggravates a nonservice-connected condition, a veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Allen, 7 Vet. App. at 448. 

In order to prevail on the issue of entitlement to secondary service connection, there must be: (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence, generally medical, establishing a connection between the service-connected disability and the current disability. Wallin v. West, 11 Vet. App. 509, 512 (1998).

There is no dispute that the Veteran sustained injuries to both wrists in an MVA which occurred on July 4, 2009. The police report establishes that the driver of a car made a left turn from a service road into the path of the Veteran, who was traveling on a main road. (See civilian police reports, received and uploaded to the Veteran's VBMS electronic claims file on April 5, 2010). The police report states that the Veteran (identified as Driver #2) "braked and evaded to the L(eft) lying Unit #2 [the motorcycle] on its l(eft) side." 

As a result of the accident, the Veteran underwent an open reduction and internal fixation of his right distal radius. He also sustained an ulnar styloid fracture on the left wrist that was treated without surgery. (See VA treatment reports, dated in December 2009 and February 2010, received and uploaded to the Veteran's VBMS electronic claims file on February 24, 2010). 

Evidence in support of the claim on a secondary basis includes a January 2010 opinion provided by DG, RN. DG opined that the Veteran had a panic attack that was caused by his PTSD that contributed to his July 2009 MVA. (See January 2010 opinion, provided by DG, RN, uploaded to the Veteran's VBMS electronic claims file on April 5, 2010). The Board finds DG's opinion to be of minimal probative value, in part because it is not supported with any medical reasoning. DG did not state her relationship to the Veteran. At the hearing before the Board, the Veteran testified that he could not remember whether or not DG worked for a treating private provider, CH, MD. DG did not articulate whether she was familiar with the Veteran's medical history, or the basis for knowing the Veteran's medical history. For these reasons, the Board finds DG's opinion to be of minimal probative value in support of the Veteran's claim. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

A March 2010 report prepared by CH, MD, supports the Veteran's claim. Dr. CH indicated that he had evaluated the Veteran earlier that month. Dr. CH related that in June 2008, another psychiatrist, Dr. WR, had diagnosed the Veteran with severe PTSD. Dr. CH opined that it was possible that the Veteran's PTSD symptoms could have contributed to his alertness on the day of the MVA. Dr. CH noted that the Veteran had reported that he had a very poor amount of sleep prior to the accident, and that the Veteran felt that the sudden presentation of a pending accident had caused a severe panic attack with possible over reaction and overcompensation of his motorcycle that resulted in the accident. (See March 2010 report from CH, MD.) 

However, the Board finds Dr. CH's March 2010 opinion to be of limited probative value. Dr. CH couched his opinion in equivocal terms, stating that a relationship between the Veteran's PTSD and his motorcycle accident injuries "was possible" and that PTSD "could have contributed." See, e.g., Tirpak v. Derwinski, 2 Vet. App. 609 (1992) (indicating that a doctor's opinion was too speculative when phrased in equivocal, may or may not be related language). See, too, Perman v. Brown, 5 Vet. App. 237, 241 (1993). Dr. CH's March 2010 opinion is equivocal on whether the Veteran's PTSD caused a panic attack and whether that panic attack resulted in the 2009 MVA that caused bilateral wrist fractures. The Court has held that a doctor's opinion phrased in terms of "may or may not" or "could" be related to service is an insufficient basis for an award of service connection. Winsett v. West, 11 Vet. App. 420, 424 (1998). For these reasons, the Board finds Dr. CH's March 2010 opinion to be of limited probative value in addressing the secondary service connection component of the Veteran's claim. 

Dr. CH provided another opinion in August 2010. In that report, he opined that "it is more likely than not" that the Veteran's PTSD symptoms "were the cause of his decreased level of alertness" on the day of his July 2009 MVA. Dr. CH further noted that the Veteran "feels the sudden presentation of a pending accident causes (sic) severe panic attack with possible over reaction and overcompensation of his motorcycle resulting in the accident." At his March 2011 hearing, the Veteran testified to his belief that Dr. CH's opinions, together with DG's statement, placed the evidence supporting the claim at least in equipoise. 

The Board acknowledges that Dr. CH's August 2010 is more definite, no speculative, compared to his March 2010 opinion. However, neither opinion from Dr. CH provides reasoning for the stated opinion. (See Dr. C. H.'s August 2010 opinion, uploaded to the Veteran's VBMS electronic claims file). In particular, Dr. CH makes it clear that the statement that sudden presentation of a pending accident caused the Veteran to overreact and overcompensate is the Veteran's statement. Because Dr. CH did not provide the clinical reasoning underlying his statements, except to the extent that he indicated that he relied on the Veteran's report, the Board finds his opinion to be of limited probative value in support of the Veteran's claim on a secondary basis. Nieves, supra. 

The civilian police report is essentially neutral, and is generally neither favorable nor unfavorable to the Veteran's claim. However, the information presented by the officer clearly states that the driver of the car that pulled out into the Veteran's pathway was at fault in the accident. The report suggests that the Veteran "laid" the motorcycle on its side, suggesting, but not specifically stating, that the action was intentional to avoid the accident. The report does not suggest in any manner that the Veteran could have taken any action which would have resulted in avoiding being ejected from the motorcycle or could have avoided turning the motorcycle over. 

Comparing the information in the accident report to the Veteran's account of the accident, as noted in the three private statements, the Board finds that the accident report is not entirely consistent with the Veteran's account. Although the accident report presents the information in a neutral manner, the fact that the accident report is inconsistent with the Veteran's account in any way is unfavorable to the Veteran's claim, given the circumstances of the case.

Because the three private statements reflect no basis or reasoning for the expressed conclusions other than the accounts provided by the Veteran, the probative value of the three private statements is so limited that the statements do not persuade the Board that the three private statements place the favorable evidence in equipoise with the unfavorable evidence.

Evidence against the claim includes VA orthopedic and PTSD examination reports, dated in September 2010. After physical evaluations, to include x-rays of the wrists, the VA orthopedic examination diagnosed the Veteran with open reduction and internal fixation (ORIF) surgery of the right wrist or right distal radius in stable condition with limitation of motion and normal left wrist with no limitation of motion. At the close of a September 2010 orthopedic examination, the VA examiner indicated opined, after a review of the police reports coincident to the July 2009 MVA and physical evaluation of the Veteran's wrists, that his bilateral wrist condition was less likely due to or caused by his PTSD. The VA orthopedic examiner reasoned that, according to the police report, the Veteran was alert enough to brake and lay down his motorcycle. (See September 2010 VA orthopedic examination report, received and uploaded to the Veteran's VBMS electronic claims file). 

The Board finds this opinion to be of high probative value because the VA examiner provided a rationale for the opinion that was based on the evidence of record, the civilian police report that was contemporaneous to the July 2009 MVA. The VA examiner provided an objective basis for the opinion, rather than simply providing an unexplained opinion that the Veteran's bilateral wrist disorders were not related to his PTSD. For these reasons, the Board finds the September 2010 VA examiner's opinion to be probative. 

At his hearing, the Veteran testified as to his belief that the opinions of Dr. CH were more probative than the opinion of the VA examiner because the VA examination was conducted by an anesthesiologist, who would be less familiar with symptoms of PTSD than Dr. CH, a psychiatrist. However, the VA examiner explicitly set forth the basis for the opinion, the official accident report, a basis for the opinion not requiring psychiatric expertise. In contrast, Dr. CH did not provide an explanation, and did not explain how psychiatric expertise affected his opinion. In addition, the VA examiner noted review of the opinion expressed by the VA examiner who conducted evaluation of mental health status, providing an additional explanation of the reasoning underlying the opinion. 

A VA mental status evaluation was conducted in September 2010. The provider noted that, when she asked the Veteran if his PTSD had affected his medical condition, he replied that a panic attack caused by PTSD caused the MVA. The VA examiner indicated that the Veteran's response that a panic attack due to PTSD caused the accident was inconsistent with the Veteran's prior reports that decreased alertness due to PTSD had caused his motorcycle accident. (See September 2010 VA PTSD examination report, uploaded to the Veteran's VBMS electronic claims file). The VA psychologist's opinion is of considerable probative value, because she explained that prior reports that decreased alertness due to PTSD caused the MVA were inconsistent with a report that a panic attack due to PTSD caused the MVA. 

At his hearing, the Veteran testified that the terminology used in the accident report was misleading or erroneous. However, the Veteran has not provided any indication that he disagreed in writing with the accident report or that he made any request for the report to be updated. The Veteran testified that the emergency treatment records related to the MVA would support his account of the accident, but the Veteran has not submitted those reports or authorized release of such reports.

The two VA opinions are of greater probative value than the three opinions from the two private providers. The Veteran has not provided any objective evidence to support his contention that his account of the accident is more accurate than the report contemporaneous to the accident. One VA examiner pointed out that the Veteran's descriptions of the effect of his PTSD on the accident to different providers were inconsistent. The Board notes that several years have elapsed between the accident and the Veteran's current account of the accident for purposes of the claim on appeal. Weighing the relative probative value of the private opinions and the VA opinions, and the lapse of time since the accident, and the variations in the Veteran's explanation of the reasons he believed his PTSD caused the accident, the facts presented by the accident report, the Board finds that the preponderance of the evidence is against a determination that the Veteran could have avoided the accident, or would have been less severely injured, if his service-connected PTSD had not contributed to the accident. 

Consideration has been given to the Veteran's assertion that his residuals of bilateral wrist fractures were either caused or aggravated by his PTSD or directly related to his active service. A lay person is competent to provide a description of what he experienced, and lay evidence regarding a medical issue (lay medical evidence) must be considered. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). However, the specific issue in this case, whether residuals of an MVA the Veteran sustained while riding his motorcycle were caused or aggravated, that is, increased in severity, by the effects of service-connected PTSD, is a complex question, both on a scientific level (i.e., laws of physics such as effects of velocity and force on objects of a certain weight and configuration) and on a medical level. 

The Board readily acknowledges that Veteran is competent to report that he still has wrist pain resulting from the 2009 MVA. The Veteran is competent to state that he experienced decreased alertness as a result of his PTSD, since a lay person is competent to state that medication has a sedative effect. The Veteran is also competent to describe a panic attack, as the Veteran is competent to describe the sensations he interprets as a panic attack. However, a clinical provider has determined that the Veteran's reports of two different options for characterizing the contributions from PTSD to the MVA are contradictory. In contrast, there is no medical opinion that the Veteran's lay descriptions of the MVA are internally consistent. The Board finds that difference explanations provided by the Veteran for the basis of his belief that his service-connected PTSD caused or aggravated an MVA are not consistent, and the inconsistency undermines the Veteran's credibility. 

Nothing in the record demonstrates that the Veteran has special training or medical expertise which would increase the probative value of his lay observations or his lay medical evidence. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). The Board finds that the Veteran's lay assertions regarding the cause and severity of a July 2009 MVA and its residuals fall outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). The circumstances of the claim, including the variations in the Veteran's reports of the events of the accident, diminish the probative value of his current report of what he experienced at the time of the accident. The preponderance of the evidence is against service connection for residuals of bilateral wrist fractures on a direct or secondary basis.

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the persuasive value and probative weights of the evidence is against the claim, that doctrine is not applicable to warrant a more favorable outcome. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). The claim must be denied.


ORDER

Service connection for residuals of bilateral wrist fractures, to include as secondary to PTSD, is denied.




____________________________________________
Tresa M. Schlecht
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs