Citation Nr: 1714077 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 12-30 901 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for a neurological disorder of the right arm, diagnosed as right ulnar nerve neuropathy, to include as secondary to the service-connected cervical spine disability. 


ATTORNEY FOR THE BOARD

A. Keninger, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1992 to July 1999.

These matters come before the Board of Veterans' Appeals (Board) from a June 2012 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. The Board previously remanded the claim in January 2014, April 2015, and August 2016.

The Board remanded this matter in August 2016 for additional development. In consideration of the appeal, the Board is satisfied there was substantial compliance with the remand directives and will proceed with review. Stegall v. West, 11 Vet. App. 268 (1998).

A Supplemental Statement of the Case (SSOC), issued by the RO in October 2016, continued to deny service connection for the Veteran's upper right extremity disability.


FINDINGS OF FACT

1. Right ulnar nerve neuropathy is not caused or aggravated by a service-connected disease or injury.

2. Right ulnar nerve neuropathy is not shown to be causally or etiologically related to any disease, injury, or incident in service, and it did not manifest within one year of the Veteran's discharge from service.


CONCLUSION OF LAW

1. Right ulnar nerve neuropathy was not proximately due to, the result of, or aggravated by a service-connected disease or injury. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.310 (2016).

2. Right ulnar nerve neuropathy was not incurred in or aggravated by the Veteran's active duty service and is not presumed to have incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 1137, 5107; 38 U.S.C.A. §§ 3.102, 3.303, 3.307, 3.309 (2016).
REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

(a) Duty to Notify

As provided by the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist a Veteran in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Upon receipt of a complete or substantially complete application for benefits, VA is required to inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will obtain; and (3) that the Veteran is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

The VCAA duty to notify initially was satisfied by way of a pre-adjudicatory letter the RO sent to the Veteran in November 2010. The letter informed the Veteran of the evidence required to substantiate the claim and of the respective responsibilities in obtaining this supporting evidence, including advising of how disability ratings and effective dates are assigned. The claim was last adjudicated by way of an October 2016 SSOC. Thus, the Veteran has received all required notice concerning the claim.

(b) Duty to Assist

VA also has a duty to assist a Veteran in the development of a claim. This duty includes assisting in the procurement of service treatment records (STRs) and pertinent post-service treatment records (VA and private) and providing an examination when needed to assist in deciding the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all necessary development has been accomplished. The claims file contains the Veteran's service treatment records. The claims file also contains VA and private medical evidence.

The Board notes that the August 2016 Board remand requested the RO obtain copies of a May 2010 EMG report and a July 2013 EMG report. These reports have not been associated with the claims file, and there is no indication that these reports could not be found or that the EMG was never conducted on those dates. However, VA is not required to provide assistance to a Veteran if "no reasonable possibility exists that such assistance would aid in substantiating the claim." 38 U.S.C.A. § 5103A(d). The Board finds there is no reasonable possibility either the May 2010 or July 2013 EMG reports will assist the Veteran in substantiating his service connection claim as they would only indicate the Veteran had a current disability, which is not in dispute, or the severity of that current disability, which is not relevant for purposes of determining entitlement to service connection.

The Board notes the record indicates the Veteran completed a Vocational Rehabilitation and Employment program in September 2016. The records associated with this program are not of record. The Board finds that for the purposes of making a determination on entitlement to service connection for a right upper extremity disability, these records will not reasonably contain evidence that will assist the Veteran in substantiating his claim for service connection as they would only provide evidence of the extent of any current right upper extremity injury. 38 U.S.C.A. § 5103A(d). Again, there is no dispute that the Veteran has a current disability, and the severity of the current disability is not relevant for purposes of service connection. 

For the above reasons, no further assistance to the Veteran is required for the purposes of deciding this claim. 38 C.F.R. § 3.159(c). 

(c) Compliance with Stegall v. West

The Board finds there has been substantial compliance with its August 2016 remand directives. The Veteran was provided another VA examination in September 2016. After a review of the claims file, the examiner identified the current neurological disorders of the Veteran's right upper extremity. The examiner further provided opinions as to whether or not it is at least as likely as not that the Veteran's neurological disorder of the upper extremity is caused or aggravated by the Veteran's service-connected cervical spine disability. An October 2016 SSOC continued to deny service connection for the Veteran's claim. 

The first directive of the August 2016 remand stated: "Obtain complete copies of the May 2010 and July 2013 EMG testing reports. If these records do not exist or are unavailable, a negative response is required." These two EMG reports have not been associated with the claims file, and there is no negative response indicating these records do not exist or are unavailable. However, Stegall requires only substantial compliance, not absolute compliance. Dyment v. West, 13 Vet. App. 141, 146-47 (1999). The Board finds there is still substantial compliance with the remand directives, despite the RO's failure to obtain or provide a negative response regarding these two EMG reports as all other directives were completed and the above-mentioned records will not assist the Board in making a decision on the Veteran's service connection claim, as noted above. 

Based on the foregoing, the Board finds the RO substantially complied with the mandates of the remand, and no further remand is necessary. Stegall, 11 Vet. App at 268. Therefore, the Board will proceed to review and decide the claim based on the evidence of record.

II. Service Connection - Neurological Disorder of the Right Arm

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d, 1362, 1366 (Fed. Cir. 2009).

Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as an organic disease of the nervous system, are presumed to have been incurred in service if they manifested to a compensable degree within the first year following separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Service connection is also warranted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Such secondary service connection is warranted for any increase in severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(b).

The Board must analyze the credibility and probative value of the evidence, account for the evidence it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the Veteran. Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). This includes weighing the credibility and probative value of lay evidence against the remaining evidence of record. See King v. Shinseki, 700 F.3d 1339 (Fed. Cir. 2012); Kahana, 24 Vet. App. at 433-34. A lay person is competent to report to the onset and continuity of his symptomatology. Id. at 438. Moreover, lay evidence may be competent and sufficient evidence of a diagnosis or nexus if (1) the particular condition at issue is the type of condition that is within the competence or common knowledge of a lay person, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Board must determine on a case-by-case basis whether a particular condition is the type of condition that is within the competence of a lay person. See Kahana, 24 Vet. App. at 433, n. 4.

A Veteran bears the evidentiary burden to establish all elements of a service connection claim, including the nexus requirement. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); see also Walker v. Shinseki, 708 F.3d 1331, 1334 (Fed. Cir. 2013). In making its ultimate determination, the Board must give a Veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. Fagan, 573 F.3d at 1287 (quoting 38 U.S.C.A. § 5107(b)).

The Veteran contends pain, weakness, and numbness in his right upper extremity is secondary to his cervical spine disability. He reported this caused him to have difficulty with prolonged lifting, grasping, and carrying items. While the Veteran does have a current right upper extremity disability, diagnosed as right ulnar nerve neuropathy in July 2012, the Board finds the Veteran's current disability was not caused or aggravated by his service-connected cervical spine disability.

A VA examiner, at a September 2015 VA examination, opined that the Veteran's current right ulnar nerve neuropathy was less likely than not caused by the cervical spine disability. The examiner also opined that the Veteran's current right ulnar nerve neuropathy was less likely than not aggravated by the cervical spine disability. The examiner provide multiple references to medical research suggesting that ulnar nerve neuropathy is most commonly caused when the ulnar nerve is compressed or irritated, which occurs most often as a result of bending the elbow for long periods of time, fluid build-up in the elbow, or a direct blow to the elbow. He further indicated ulnar neuropathy occurs in the elbow and then the wrist, but is not "manifest[ed] by the cervical spine nor is it aggravated by the cervical spine." 

The Board finds the examiner's opinions are highly probative and well supported with medical research as to the causes of ulnar nerve neuropathy. The opinion was provided after the examiner had fully reviewed the claims file and examined the Veteran to assess the nature of his current disabilities. The Veteran, while competent to testify to the symptoms he experiences regarding his right arm, is not competent to determine the etiology of those symptoms. Jandreau, 492 F.3d at 1376-77.

Because the Veteran's right ulnar nerve neuropathy is not caused or aggravated by his service-connected cervical spine disability, service connection as secondary to the Veteran's cervical spine disability is denied.

While, the Veteran does not contend his right ulnar nerve neuropathy is directly connected to service, the Board will consider the possibility this disability is directly connected to service. As noted above, the Veteran was diagnosed with right ulnar nerve neuropathy in July 2012. Thus, the requirement for a current disability has been met.

However, the service treatment records are silent in regard to any disability of the right upper extremity while in service. At a December 1998 Report of Medical History, the Veteran described his health as poor due to pain in his neck, upper back, and left arm, but the right arm is not mentioned by the Veteran. At a December 1998 VA Compensation Evaluation, the Veteran again reported pain in the neck, upper back, and left shoulder without mentioning any pain in the right arm. The record suggests the Veteran's first report of pain in the right arm was in March 2011, 12 years after being discharged from service, when he indicated shooting pains in his right upper arm. The Veteran does not further contend that his right arm pain began while he was in service. Absent an in-service injury or disease, direct service connection must be denied.

Organic diseases of the nervous system, including right ulnar nerve neuropathy, is considered to be a chronic disease under 38 C.F.R. § 3.309(a). The Veteran did not report symptoms of pain in the right arm until 2011, approximately 12 years after discharge from service, and the Veteran did not receive a diagnosis of right ulnar nerve neuropathy until 2012, approximately 13 years after the Veteran was discharged from service. As a result, there is no presumption the Veteran's right ulnar nerve neuropathy is service-connected under 38 C.F.R. § 3.307(a).

In regard to the continuity of symptomatology since service, as noted above, the Veteran was not diagnosed with right ulnar nerve neuropathy until approximately 13 years after discharge from service. The Veteran does not contend he has experienced symptoms of right ulnar nerve neuropathy since service, and the first indication of symptoms of pain, numbness or weakness in the right arm were reported by the Veteran at a VA exam in March 2011, approximately 12 years after being discharged from service. The Board finds there is no continuity of symptomatology between any disease or injury noted in service and the Veteran's current right ulnar nerve neuropathy.

In reaching the above conclusions, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, that doctrine is not applicable where, as here, there is not an approximate balance of positive and negative evidence on any aforementioned theory of entitlement. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). Thus, the claim must be denied.


ORDER

Entitlement to service connection for a neurological disorder of the right arm, diagnosed as right ulnar nerve neuropathy, on a direct basis and as secondary to the service-connected cervical spine disability is denied.



____________________________________________
A. P. SIMPSON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs