NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANDERSON M. THOMPSON,**
*Claimant-Appellant,*

**v.**

**ROBERT A. MCDONALD,**
**Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2014-7078

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 12-3739, Judge Mary J. Schoelen.

---

Decided: September 15, 2014

---

ANDERSON M. THOMPSON, of Memphis, Tennessee, pro se.

JENNIFER E. LAGRANGE, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and SCOTT D. AUSTIN, Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy

Assistant General Counsel, and TRACEY P. WARREN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

————————————

Before CHEN, MAYER, and LINN, *Circuit Judges.*

PER CURIAM.

Anderson M. Thompson appeals the U.S. Court of Appeals for Veterans' Claims (Veterans Court) decision affirming the Board of Veterans' Appeals (Board) denial of disability compensation for his type II diabetes mellitus, bilateral peripheral neuropathy of the lower extremities, and tinea pedis allegedly caused by exposure to Agent Orange or other herbicides near the Korean Demilitarized Zone (DMZ) while serving in the U.S. Army during the Vietnam War. After twice remanding for development of the record, the Board concluded that there was insufficient evidence to support Mr. Thompson's assertion that he was entitled to a presumption of service connection under 38 C.F.R. § 3.307(a)(6)(iv) or that he was actually exposed to Agent Orange or other herbicides in Korea. The Veterans Court affirmed. Because this appeal disputes only application of law to fact, and the Veterans Court did not otherwise misinterpret the benefit of the doubt doctrine, we dismiss for lack of jurisdiction.

I

Mr. Thompson served on active duty in the U.S. Army from November 1966 to February 1969. From April 1967 to May 1968, he served in Korea with the 833rd Ordnance Company. *See Thompson v. Shinseki*, No. 12-3739, 2014 WL 1233924, at *1 (Vet. App. Mar. 26, 2014). Post-service treatment records from 2006 to 2010 confirm that Mr. Thompson was diagnosed with type II diabetes mellitus, diabetes with neuropathy, and tinea pedis. Appellee App'x 22. In May 2007, Mr. Thompson filed for disability compensation, claiming that his current medical problems

were caused by exposure to Agent Orange or other herbicides during his service in Korea.

In July 2007, a Department of Veterans Affairs (VA) regional office (RO) in Nashville, Tennessee sent Mr. Thompson a letter informing him that evidence would be needed to establish his entitlement to service connection. *Id.* at 68. The RO later sent an amended letter in December 2007 requesting evidence to verify exposure to Agent Orange. *Id.* In connection with Mr. Thompson's claim, the RO further requested that the National Personnel Records Center (NPRC) search for records related to Mr. Thompson's potential exposure to herbicides. After the search produced no relevant records, the RO denied Mr. Thompson's claims, explaining that there was no evidence that his diabetes arose during service or to a compensable degree within one year following separation. And, further, there was no evidence of record that Mr. Thompson had actually been exposed to herbicides during service.

Mr. Thompson appealed the RO's determination to the Board. During an August 2009 hearing, Mr. Thompson testified that he was assigned to the 833rd Ordnance Company in Korea as a quartermaster, where his responsibilities included delivering supplies to the First and Seventh Infantry Divisions near the DMZ. *Id.* at 50. Mr. Thompson testified that, on occasion, for approximately three days at a time, he was required to camp on a base near the DMZ. *Id.* He claimed that, as a result of being in the area, he had been exposed to Agent Orange or herbicides. When asked by the presiding judge how he knew that he had been exposed, Mr. Thompson responded that he did not realize until many years later that he had been in an area where herbicides had been used. *Id.* at 56.

In December 2009, the Board remanded Mr. Thompson's claims to the Appeals Management Center (AMC) to obtain records regarding the 833rd Ordnance Company from the U.S. Army and Joint Services Records Research

Center (JSRRC). The AMC requested records from the JSRRC as well as the National Archives Records Administration (NARA) to ascertain whether Mr. Thompson's company was part of, or otherwise attached to, divisions deemed presumptively exposed to Agent Orange or other herbicides in Korea. The NARA found no records. Records concerning the Eighth Army, however, confirmed that the 833rd Ordnance Company was part of the Eighth U.S. Army Support at Camp Ames. Beyond this, the AMC was unable to determine which infantry divisions the company supported.

In November 2010, Mr. Thompson submitted an undated list entitled "Supported Units," which listed 31 units, including the Second and Seventh Infantry Divisions, but it lacked any corresponding reference to the 833rd Ordnance Company. *Id.* at 40. Thus, in March 2011, the Board again remanded for record development. In March 2012, the AMC provided a review of the 833rd Ordnance Company's histories. These histories stated that the company was stationed 21 miles from the DMZ, but did not indicate specific duties performed by its members or whether or not the company was attached to the Second or Seventh Infantry Divisions, as Mr. Thompson claimed. *Id.* at 24–25.

In December 2012, the Board issued a decision finding that Mr. Thompson was not entitled to a presumption of herbicide exposure because the relevant service records did not establish that he had served in a military unit identified by the Department of Defense (DoD) as one that operated in or near the DMZ during the relevant time period. The Board compared Mr. Thompson's lay testimony with the undated "Supported Units" document. *Id.* In this regard, Mr. Thompson had testified that he supported the First and Seventh Infantry Divisions, but the document listed the Second and Seventh Infantry Divisions. *Id.* at 39–40. And, in any event, multiple attempts to corroborate Mr. Thompson's testimony returned noth-

ing to support his entitlement to a presumption of service connection under 38 C.F.R. § 3.307(a)(6)(iv).

The Board also concluded that there was insufficient evidence to establish actual exposure to herbicides. Specifically, Mr. Thompson's personnel records are silent regarding in-service herbicide exposure, or any symptoms related to his claimed disabilities. *Id.* at 25–26, 29. Although Mr. Thompson's claims lacked contemporaneous medical evidence, the Board acknowledged that competent lay evidence of symptoms after service could be considered, if credible, regardless of this deficiency. *Buchanan v. Nicholson*, 451 F.3d 1331, 1335 (Fed. Cir. 2006). In this case, however, the Board determined that Mr. Thompson's lay evidence that his tinea pedis was present from the time of active duty to the present was not credible because Mr. Thompson expressly denied any skin disability at the time of his separation examination. Appellee Appx' 30. As to his diabetes and related neuropathy, Mr. Thompson did not allege that these disorders arose while in-service or provide evidence of disease etiology. Accordingly, the Board found his claims were unsubstantiated and the evidence weighed against a finding of service connection. *Id.* at 30.

Mr. Thompson appealed to the Veterans Court, arguing that that the Board should have applied the benefit of the doubt doctrine because evidence of exposure met the requirement of 38 U.S.C. § 5107(b). Section 5107(b) states: "When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." *Id.* Thus, section 5107(b) applies when the Board determines that the evidence is in equipoise. Conversely, when the preponderance of the evidence weighs against the claim, "[the Board] necessarily has determined that the evidence is not 'nearly equal' or 'too close to call,' and the benefit of the doubt rule therefore has no application." *Ortiz v.*

*Principi*, 274 F.3d 1361, 1365 (Fed. Cir. 2001). The Veterans Court reviewed the Board's fact findings for clear error and affirmed the Board's determination that the benefit of the doubt rule did not apply. *Thompson*, 2014 WL 1233924, at *4.

Mr. Thompson appealed, asserting this Court's jurisdiction under 38 U.S.C. § 7292.

## II

Our jurisdiction over appeals from the Veterans Court is limited. While we may review challenges to the validity or interpretation of a statute or regulation relied on by the Veterans Court, we lack jurisdiction to review a challenge to a "factual determination" or "law or regulation as applied to the facts." 38 U.S.C. § 7292(d)(2).

The DoD confirmed that herbicide Agent Orange was used from April 1968 through July 1969 along the DMZ in Korea. Appellee App'x 44. The Board recognized that the Second and Seventh Infantry Divisions had certain units in the affected area at the time Agent Orange was being used. *Id.* at 44–45. Under 38 U.S.C. § 1116, if it is determined that a veteran served between April 1, 1968 and August 31, 1971 in a unit determined by the DoD to have operated in or near the Korean DMZ—where herbicides are known to have been applied—then he or she is presumed to have been exposed to herbicides containing Agent Orange. 38 C.F.R. § 3.307(a)(6)(iv). This presumption applies to enumerated diseases associated with exposure to herbicide agents, one of which is type II diabetes mellitus. 38 C.F.R. § 3.309(e).

This presumption is an exception to the rule that establishing service connection requires medical, or in certain circumstances lay, evidence showing: (1) current disability; (2) incurrence or aggravation in service; and (3) nexus between the in-service injury or disease and current disability. *See Shedden v. Principi*, 381 F.3d 1163,

1167 (Fed. Cir. 2004). Disorders diagnosed after discharge may still be considered service connected if the evidence, including the pertinent service records, establishes that the injury or disease was incurred by the veteran in-service. 38 C.F.R. § 3.303(d); *see also Combee v. Brown*, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

## III

The determinative issue is whether Mr. Thompson's military service caused his current medical problems. This implicates Mr. Thompson's contention that he was exposed to Agent Orange or other herbicides while serving in Korea.

As to his claim of presumptive service connection for type II diabetes and its related condition of neuropathy, the Board assessed whether Mr. Thompson's unit operated "in or near"—or was otherwise attached to a unit that operated in or near—the Korean DMZ during the relevant time period. 38 C.F.R. § 3.307(a)(6)(iv). The service records confirm that Mr. Thompson was stationed in Korea from April 1967 to May 1968 and assigned to the 833rd Ordnance Company. But these records do not indicate that Mr. Thompson's company was among those considered by the DoD as stationed along the DMZ during this time period.

Mr. Thompson nonetheless maintains that he served near the DMZ during this time period, even though the service records do not support this contention. The Board granted Mr. Thompson a hearing to explain the nature of his service. Appellee App'x 48–64. In accordance with its duty to assist veterans develop their claims and to procure service records under 38 U.S.C. § 5103A, the Board twice remanded for development of the record, but no corroborative evidence was found.

Mr. Thompson relies on two pieces of evidence to support his assertion that he was exposed while supporting

other units along the DMZ: (1) the undated "Supported Units" list; and (2) his lay testimony that his duties in the 833rd Ordnance Company required trips to the DMZ. After analyzing the "Supported Units" list, the Board concluded that the list was of limited probative value because it did not specifically reference the 833rd Ordnance Company or include a date. *Id.* at 25. Regarding Mr. Thompson's lay testimony, the Board found this insufficient to establish service connection, explaining that Mr. Thompson's service personnel records are silent as to in-service herbicide exposure, and lay statements alone do not link his later-occurring diabetes with his service during the war. Mr. Thompson does not dispute the Board's conclusions or argue that the Board failed to fulfill its duty to assist. We discern no challenge to the Veterans Courts' interpretation of the law, and we lack jurisdiction to reconsider the sufficiency of the evidence.

Mr. Thompson also argues that the Board erred in denying disability compensation for his tinea pedis. The Board correctly noted, however, that tinea pedis is not among the enumerated medical problems giving rise to a presumption of service connection under § 3.307(a)(6). Accordingly, the Board considered this claim as one predicated on direct causation. To support his claim, Mr. Thompson relies on his testimony that he had been treated for the affliction while in service. *Id.* at 53. This testimony, however, is not otherwise supported by the record. Notably, Mr. Thompson's treatment records during his period of service are silent as to this particular diagnosis or its symptoms. *Id.* at 29. A medical examiner's report delivered at the time of discharge, dated February 1969, similarly did not indicate skin abnormalities. *Id.*

Rather, the Board identified that the earliest post-service mention of the relevant symptoms occurred in August 1974, when an examiner observed a skin disorder. *Id.* The examiner did not, however, provide any opinion as to the cause of the disorder. *Id.* The Board concluded,

therefore, that Mr. Thompson's tinea pedis did not manifest in service and nothing in the record supported that his current diagnosis is causally related to an in-service disease or injury. We lack jurisdiction to reconsider the Board's determination on this matter.

Alternatively, Mr. Thompson argues that his claim is entitled to the benefit of the doubt under 38 U.S.C. § 5107(b). The Board found that the evidence weighed against each of Mr. Thompson's claims and thus concluded that the benefit of the doubt rule was not applicable, and the Veterans Court affirmed. The Veterans Court correctly reasoned that the benefit of the doubt rule does not apply when the evidence is not in equipoise. *Fagan v. Shinseki*, 573 F.3d 1282, 1287 (Fed. Cir. 2009); *Ferguson v. Principi*, 273 F.3d 1072, 1075 (Fed. Cir. 2001) ("Thus the evidence was not in equipoise but rather preponderated against [the veteran's] claim. Therefore, the benefit-of-the-doubt doctrine was not applicable."). We lack jurisdiction to reweigh the evidence considered by the Board.

We have considered Mr. Thompson's remaining arguments and find them unpersuasive. Accordingly, we dismiss Mr. Thompson's appeal for lack of jurisdiction.

## DISMISSED

### COSTS

No costs.