Citation Nr: 1825330 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 14-15 937A ) DATE
 )
 )


On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia
 
 
THE ISSUE
 
Entitlement to service connection for acquired psychiatric disorder to include an anxiety and a dysthymic disorder.
 
 
REPRESENTATION
 
Appellant represented by: Georgia Department of Veterans Services
 
 
WITNESSES AT HEARING ON APPEAL
 
Appellant, spouse and daughter
 
 
ATTORNEY FOR THE BOARD
 
Allen M. Kerpan, Associate Counsel
 
INTRODUCTION
 
The Veteran served on active duty from April 1974 to February 1978.
 
This case comes before the Board of Veterans' Appeals (Board) on appeal from a 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia.
 
In March 2017, the Veteran testified at a Travel Board hearing before the undersigned. A copy of the transcript of that proceeding has been made a part of the record.
 
This appeal was processed using the Veterans Benefits Management System (VBMS) and the Virtual VA electronic claims files. Accordingly, any future consideration of the case should take into consideration the existence of these electronic records.
 
 
FINDING OF FACT
 
The Veteran has current diagnoses of major depressive, dysthymic and posttraumatic stress disorders which had their onset during or are related to his military service.
 
 
CONCLUSION OF LAW
 
A major depressive disorder, dysthymia and a posttraumatic stress disorder were incurred inservice. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2017).
 
 

REASONS AND BASES FOR FINDING AND CONCLUSION
 
With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2017).
 
The Veteran contends that he has an acquired psychiatric disorder which had its onset during his military service. At his March 2017 Board hearing, the claimant testified that he started having psychological difficulties after being harassed by military security police which ultimately escalated into being pepper sprayed and beaten after a traffic stop while on base. The Veteran testified that he was hospitalized for psychiatric care as a result of the incident and that his emotional problems ultimately led to inservice job performance issues. 

Service personnel records from January 1977 note that the Veteran was judged to possess many qualities that the military looks for in a career airman. His performance of duty was judged to have been excellent, and his bearing and behavior allowed him to function in stressful situations. The appellant's supervisor opined that the service would benefit greatly if the claimant were selected for reenlistment.

Service personnel records from December 1977 show that the Veteran was recommended for administrative discharge due to a character and behavior disorder. The Veteran was noted to have resisted apprehension in July 1977. While the Veteran had been charged with various offenses under the Uniform Code of Military Justice to events that led to the July 1977 incident, those charges were dismissed because the security police had compromised their official position through harassment and provoking speech. 

Service treatment records reveal that the Veteran was admitted to a hospital in September 1977 with complaints of difficulty sleeping and eating secondary to legal and job problems. He reported being harassed at work and by security police. The appellant believed he was being singled out due to his race. Following a mental status examination the Veteran was diagnosed with a chronic, severe mixed personality disorder with passive-aggressive, paranoid and inadequate features. He was also noted to be suffering from a situational reaction of adulthood.

The Veteran was seen for a VA examination in December 2011. The examiner noted the appellant's self-reported inservice history of being hospitalized in September 1977 with complaints of difficulty sleeping and eating secondary to legal and job problems. The examiner noted that the Veteran while on active duty reported being hassled at work and by security police, and that the appellant believed he was being singled out due to his race. The December 2011 examiner noted the inservice diagnosis of a chronic, severe mixed personality disorder with passive-aggressive, paranoid and inadequate features. 

In December 2011 the appellant informed the examiner that he had not worked in eleven years due to chronic neck and back pain. His medical history also included diagnoses of hypertension, hepatitis C, and noninsulin dependent diabetes mellitus. The Veteran reported that he had various postservice legal problems to include being arrested for disorderly conduct, aggravated assault, and possession of marijuana. His psychiatric symptoms in December 2011 were noted as a depressed mood, chronic sleep impairment, and disturbances of motivation and mood. Following a mental status examination the Veteran was diagnosed with a dysthymic disorder. The examiner opined that it was less likely than not that the dysthymic disorder was related to service. The examiner reasoned that given the appellant's chronic medical conditions and the impact of chronic pain on his general psychiatric health that dysthymia was more likely to have resulted from physical health problems represented a pathophysiologic connection between the two.

In March 2017, a VA psychologist at the Atlanta Community Based Outpatient Clinic diagnosed the Veteran with posttraumatic stress, major depressive, mood, and undifferentiated somatoform disorders. The examiner noted that the "sentinel event" was that the Veteran had a history of being assaulted by military police as the result of a traffic stop. The examiner noted that the appellant felt that he was targeted inservice, but feeling responsible for the abuse because he did not fight back. The Veteran stated that he had experienced ongoing exacerbations of his symptoms whenever he had an interaction with law enforcement or other governmental organizations. In a separate March 2017 letter this VA psychologist opined that it was his opinion that the appellant's major depressive disorder, dysthymia and posttraumatic stress disorder were at least as likely as not due to the Veteran's military service. The examiner based this opinion on the Veteran's inservice experience which qualified as a traumatic event, service treatment records, and VA examinations and records. 

In March 2017 the Veteran testified that he did not seek treatment postservice for his emotional problems before 2011 because he was unaware that he was entitled to VA benefits and could not afford private treatment. 

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the current disability and an in-service precipitating disease, injury or event. 38 C.F.R. § 3.303(a); Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Consistent with this framework, service connection is warranted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Personality disorders are not diseases or injuries within the meaning of applicable legislation governing awards of VA compensation. 38 C.F.R. § 3.303 (c).

The establishment of service connection for posttraumatic stress disorder requires: (1) medical evidence diagnosing posttraumatic stress disorder; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a link between current symptomatology and the claimed in-service stressor. 38 C.F.R. 3.303 (f); see also Cohen v. Brown, 10 Vet. App. 128 (1997).

If a claim for service connection for posttraumatic stress disorder is based on a claimed in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually-transmitted diseases; and roommates, fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 

VA will not deny a posttraumatic stress disorder claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence. VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred. 38 C.F.R. § 3.304 (f)(3).

In this case the evidence shows that the appellant has a verified inservice stressor as a result of a history of being harassed and verbally assaulted by military police. This incident was found to be a sufficient stressor by a qualified medical professional. While the Veteran was diagnosed with a personality disorder inservice, as a matter of law a personality disorder may not be service connected. Significantly, the Veteran has also been diagnosed with a major depressive disorder, dysthymia and posttraumatic stress disorder which a March 2017 VA examiner found were at least as likely as not due to the appellant's military service. While it is true that a December 2011 examiner reached an opposite conclusion, that is, that a dysthymic disorder was not related to service, the Board finds no reason to favor the December 2011 opinion over the opinion offered in March 2017. 

Accordingly, finding that the evidence is in equipoise the Board will resolve reasonable doubt in the Veteran's favor and grant service connection for a major depressive disorder, dysthymia and posttraumatic stress disorder. Wise v. Shinseki, 26 Vet. App. 517, 531 (2014). ("By requiring only an 'approximate balance of positive and negative evidence' . . ., the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding . . . benefits.").


ORDER
 
Entitlement to service connection for a major depressive disorder, dysthymia and posttraumatic stress disorder is granted.
 


____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs