Citation Nr: 1829788 
Decision Date: 08/08/18 Archive Date: 08/17/18

DOCKET NO. 12-01 261 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Fort Harrison, Montana


THE ISSUE

Entitlement to service connection for asthma.


REPRESENTATION

Appellant represented by: Robert M. Kampfer, Attorney at Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

M. Nye, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1971 to September 1973, August 1974 to September 1975, June 1979 to June 1981, January 1983 to September 1993, and from December 1996 to September 1997.

This matter comes to the Board of Veterans' Appeals (Board) from a February 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Fort Harrison, Montana. In that decision, the RO found that the Veteran had submitted new and material evidence sufficient to reopen a previously denied claim for service connection for asthma, but then proceeded to deny the asthma claim on its merits. The Veteran appealed that decision to the Board. 

In June 2010, the Veteran testified during a hearing before the undersigned Veterans Law Judge (VLJ) Schwartz, and in June 2012, he testified at a second hearing before the undersigned VLJ Osborne. Although the first hearing before VLJ Schwartz occurred before the Veteran initiated his appeal of the asthma issue, the Veteran did testify about his asthma during the June 2010 hearing. Transcripts of both hearings have been associated with the claims file. 

Because every VLJ who conducts a hearing on the same issue must participate in the decision, and appeals may be assigned only to a single VLJ or a panel of at least three members, the fact that he testified about the same issue in two different hearings gave the Veteran a right to yet another hearing before a third VLJ. See 38 U.S.C.A. § 7102 (West 2014); 38 C.F.R. § 20.707 (2017); Arneson v. Shinseki, 24 Vet. App. 379 (2011). The Board therefore wrote to the Veteran informing him of his right to a third hearing before a new VLJ. In December 2014, the Veteran responded to the letter, indicating that he waived his right to another hearing before a third VLJ. For this reason, this appeal may proceed without a new hearing. 

In May 2015, the Board issued a decision and remand, in which the Veteran's request to reopen his previously denied asthma claim was granted and the reopened claim was remanded to the RO for further development. 


FINDINGS OF FACT

1. Asthma was not noted in the report of physical examination at the time the Veteran entered active military service.

2. There is not clear and unmistakable evidence showing that the Veteran's asthma preexisted service and that this disability was not aggravated by service.

3. The evidence is at least evenly balanced as to whether the Veteran's current asthma was first manifest in service.


CONCLUSIONS OF LAW

1. The Veteran is presumed to have been in sound condition when he was examined, accepted and enrolled for service. 38 U.S.C.A. § 1111 (West 2014); 38 C.F.R. § 3.304(b) (2017).

2. The record does not include clear and unmistakable evidence rebutting the presumption of soundness. 38 U.S.C.A. § 1111 (West 2014); 38 C.F.R. § 3.304(b) (2017).

3. Asthma was incurred in service. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA) imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5103, 5103(A) (West 2002); 38 C.F.R. § 3.159 (2017). As the Board is granting the Veteran's claim for entitlement to service connection for asthma, further discussion of the VCAA with regard to this claim is unnecessary. 

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the current disability and an in-service precipitating disease, injury or event. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). 

Certain statements in the Veteran's medical records, both during and after his active duty service raise the issue of whether the Veteran may have had asthma before joining the Army, implicating the presumption of soundness. See Gilbert v. Shinseki, 26 Vet. App. 48, 54 (2012). Under this statutory presumption, except for defects, infirmities or disorders noted on an entrance examination, every veteran is generally presumed to have been in sound condition when examined, accepted and enrolled for service. See 38 U.S.C.A. § 1111. 

"When no preexisting condition is noted upon entry into service, the veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service." Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004) (emphasis added). This is a difficult burden to overcome because the "clear and unmistakable" standard is a high one and because of the two-part nature of the burden. Moreover, with respect to the "aggravation prong" of the burden, the Secretary is in the unusual position of being required to prove a negative. See Horn v. Shinseki, 25 Vet. App. 231, 238 (2012) ("When the presumption of soundness applies, however, the burden remains on the Secretary to prove lack of aggravation and the claimant has no burden to produce evidence of aggravation.") (emphasis in original).


Factual Background

According to the report of his September 1971 enlistment examination, the Veteran's lungs and chest were normal at that time. No asthma was noted at the time he was accepted and enrolled for service. Similar notes appear in many subsequent examination reports, dated August 1973, June 1976, October 1982, February 1991 and May 1993. The October 1982 report, however, indicates that the Veteran had asthma when he was approximately five years old. 

Service medical records also include several reports of medical history, in which the Veteran was asked to indicate whether he had ever experienced a list of diseases and injuries. The Veteran indicated that he had previously had asthma in the October 1982 report and in another report dated February 1988. In reports dated April 1991 and April 1992, he indicated he did not know whether or not he previously had asthma. The April 1991 report indicated a "bronchospasm" in childhood. On his May 1993 report of medical history, the Veteran marked "no" next to text indicating whether or not he ever had asthma. 

The Veteran's lungs and chest were normal at the time of his May 1993 separation examination. He was not discharged from active duty until September of the same year. In July 1993, he visited a physician in private practice with complaints of wheezing and sore lungs. The physician's assessment was "asthma, possibly precipitated by his allergic reactions in California." According to the July 1993 treatment notes, the Veteran mentioned a history of childhood asthma. He was prescribed oral medication and Proventil inhalers. The physician, Dr. W.B., would later write several letters in support of the Veteran's claim. 

The Veteran participated in a pulmonary function test, dated December 1993, which indicated "possible mild asthma." 

In October 2002, the Veteran submitted the following letter from 
Dr. W.B.: "I have been caring for [the Veteran] in 1989, and from then until 1993 he had no evidence of asthma. At that point he appeared to develop a case of asthma secondary to an environmental exposure. He did give a history of asthma as a child and was hospitalized for two weeks, but there was no intervening history between then and this exacerbation in 1993. His asthma was then quiescent until October 2002. At that point he again began complaining of tightness in his upper chest and had abnormal pulmonary function studies consistent with the diagnosis of asthma." 

The Veteran was referred to a pulmonologist, Dr. W.K., who conducted tests. In a note dated January 2003, Dr. W.K. explained the need for the tests: In my mind it really comes down to whether [the Veteran] has asthma or he does not. He could have a mild restrictive component that is attributable to his weight. By history, he does describe respiratory troubles in his youth which may have in fact been asthma. He also has an allergic rhinitis and sinusitis axis which would support extrinsic asthma. 

Dr. W.K.'s later records confirm a diagnosis of exercise-induced asthma. According to an April 2003 letter from Dr. W.K., "Prior to these tests multiple spirometry tests were indeterminate. The earliest recorded annotation I have seen in the medical record describing asthma was dated July 20, 1993. At that time, he complained of dyspnea on exertion to [Dr. W.B.] . . . He was diagnosed with asthma at that time." 

In August 2003, Dr. W.B. wrote a letter to clarify the reference to childhood asthma in his July 1993 note: "This letter is to clarify that history of asthma was from the patient's recollection alone, there was no medical documentation that the patient actually had asthma. The fact that the patient was symptom-free from childhood until 1993 would go against that earlier diagnosis being consistent with asthma." 

The RO arranged for the Veteran to be examined by a VA physician assistant in June 2003. Commenting on her review of the Veteran's medical history, the examiner wrote, "[service treatment records] were reviewed and are silent for any treatment for his asthma while in the military." The examiner then summarized Dr. W.B.'s July 1993 diagnosis and subsequent October 2002 letter. After her interview with the Veteran, the examiner reported that he had some dyspnea on exertion, but that he did not have frequent asthma attacks, his symptoms being controlled with medication. The examiner also noted the Veteran's recent referral to the pulmonologist. She wrote, "Until a final diagnosis is given, I cannot comment on whether his 'asthma' is related to his time in the service. Impressions at this time: 1) Mild persistent asthma versus 2) suspected sleep disorder." 

After receiving additional records from the pulmonologist, the June 2003 VA examiner provided an addendum opinion. In the examiner's opinion, it was unlikely that the Veteran's asthma was related to military service. In support of her opinion, the examiner relied on the absence of treatment for asthma between 1993 and 2002. 

During his first appeal to the Board, the Veteran testified at a videoconference hearing in May 2004. Much of the information he provided about his history of asthma is already described in the Board's summary of the medical records. But the Veteran did explain the records which mention childhood asthma and hospitalization. He said, "I do remember being told that I was hospitalized when I was very, very young. I don't have any personal memory of that. That's just the information I put down on my [sic] the form - " He further testified that, "I was never suffering from asthma while in the early part of my military career. It was only towards the end when I had episodes of asthma." 

In March 2006, the Board denied the issue on appeal. The Veteran appealed the March 2006 Board decision to the Court, which affirmed the denial of service connection for asthma in a memorandum decision issued in June 2009. 

In August 2009, the Veteran filed a request to reopen his previously denied asthma claim. In developing this claim, the RO arranged a new examination with a VA nurse practitioner, which took place in December 2009. The examiner interviewed the Veteran and discussed the effectiveness of various inhalers. She also reviewed pulmonary function tests. The diagnosis was obstructive asthma. The examination report included an extensive summary of the Veteran's medical history, which essentially repeats information the Board has described above. In the examiner's opinion, it was less likely than not that the Veteran's asthma was the result of any in-service disease, injury or event. She made this conclusion after noting that, according to medical history reports, completed by the Veteran in service, he gave inconsistent answers on the subject of whether he had childhood asthma. 

In January 2010, the December 2009 VA examiner was asked to provide an addendum report, to address the issue of whether the evidence of childhood asthma was sufficient to rebut the presumption of soundness. In her addendum report, the examiner indicated that asthma did clearly and unmistakably exist before service. In support of this conclusion, the examiner noted the multiple references to childhood asthma in the service treatment records and in the post-service records of Dr. W.B. The examiner also noted that, according to Dr. W.B.'s July 1993 note, the Veteran's childhood asthma "was apparently severe enough to be hospitalized for 2 weeks." The January 2010 addendum opinion described asthma as a "chronic disease" which "can be controlled but it does not go away." In the examiner's opinion, asthma was not permanently worsened during military service. The rationale for this conclusion was that, the "available records do not show any abnormal worsening of the underlying asthma disorder that would be due to aggravation beyond the normal course of the condition." 

Relying on the December 2009 VA examiner's opinion, the RO reopened and denied the Veteran's asthma claim in February 2010. The June 2010 Travel Board hearing, which was scheduled in a separate appeal for several claimed disabilities alleged to be secondary to Gulf War undiagnosed illness, included testimony about the Veteran's asthma. Most of the information he provided in the June 2010 hearing is already part of the Board's summary of the evidence. He emphasized that, before his deployment to the Persian Gulf, he did not have problems with asthma and did not receive treatment for asthma. The Veteran testified that he was aware of no contemporaneous medical evidence that he had asthma as a child. According to him, the source of his earlier statements about childhood asthma was "the hearsay memories my siblings told me when I was a real little kid." 

In July 2010, Dr. W.B. wrote another letter on the Veteran's behalf. In the letter, Dr. W.B. explained that he had reviewed the Veteran's records. He explained that "his initial diagnosis of asthma was in June of 1993. This was confirmed by a pulmonary function study in October of 2002. He was complaining of shortness of breath and fatigue around the same time as his asthma began to flare. I cannot find any reference that he had difficulty with these problems prior to this time. I think it is at least as likely as not that his symptoms are related to his time served in the Gulf War." 

Dr. W.B. wrote another letter in March 2012, commenting again on his July 1993 note, particularly the portion of that note which mentioned childhood asthma. According to Dr. W.B., "[the Veteran] stated at that time he was hospitalized for 2 weeks. He further clarifies this history stating that this is what someone told him. He doesn't actually recall being given the diagnosis of asthma at that point in time. He was relying on information from another individual. I do not have any medical records that would confirm the diagnosis of asthma in childhood. Given the difficulty that we all have with long-term recollection of facts during childhood, I would not rely upon this history for the diagnosis of asthma in childhood." 

The transcript of the June 2012 Travel Board hearing is largely consistent with the previous information received from the Veteran and from Dr. W.B. In his testimony, the Veteran also indicated that the siblings who had told the Veteran he had asthma are not physicians or nurses. He further testified that, during the Gulf War, "I couldn't breathe because of the oil fires and everything . . . ."

In May 2015, the Board reopened and remanded the previously denied asthma claim. On remand, the RO was instructed to make additional efforts to obtain potentially relevant outstanding records and to obtain a new addendum opinion from the December 2009 VA examiner. The examiner was asked to address the Veteran's statements concerning his exposure to oil fires in the Persian Gulf and to reconcile her findings with the favorable opinions of Dr. W.B.

In September 2015, the Veteran was examined by the same nurse practitioner who had previously examined him in December 2009. The diagnosis was asthma and the examiner identified 1957 as the initial date of diagnosis. Current treatment included the use of an albuterol inhaler. 

In the examiner's opinion, it was unlikely that the Veteran's asthma was the result of any in-service event or injury. The rationale for her opinion was that, according to service treatment records, "asthma was a pre-existing condition which began in childhood." The examiner also noted that, in her interview with the Veteran, he did not discuss his exposure to environmental hazards during the Persian Gulf War. The examiner further indicated that it was unlikely that asthma was aggravated beyond its normal progression during service. She explained that the December 1993 pulmonary function tests, which showed only minimal obstructive lung disease, supported this conclusion. 

At the RO's request, the examiner provided two supplementary reports to her September 2015 examination report. The first of these opinions is dated November 2015 and is only available in the Veteran's Virtual VA electronic claims file. The second is dated May 2016. The RO requested the first addendum report in order to ask the examiner to address, once again, the clear and unmistakable evidence standard for rebutting the presumption of soundness. 

In her November 2015 report, the examiner indicated that, in her opinion, the evidence did indeed clearly and unmistakably show that asthma pre-existed service and was not aggravated during service. The explanation for this decision was similar to the reasons she provided to support her opinion on the same questions in January 2010. According to the examiner, "The record clearly shows [the Veteran] was diagnosed at age 5 with asthma." 

After reviewing the evidence again, the RO requested a new opinion. Noting the finding in the March 2006 Board decision that the evidence of childhood asthma did not rebut the presumption of soundness, the RO asked the September 2015 VA examiner, in her new opinion, to assume that the Veteran was in sound condition when he first joined the military. She was further instructed that she should "not consider the theory that [the Veteran's] asthma existed prior to military service." 

The examiner responded to the RO's request in May 2016. Noting the various responses the Veteran gave during service to the question of whether he had childhood asthma, the examiner expressed skepticism about the RO's latest instructions. The examiner then proceeded to offer a new opinion which was limited to the issue of "the degree of likelihood that [the Veteran's] asthma was caused by or due to prior environmental exposures during military service?" 

In the examiner's opinion, it was unlikely that the Veteran's asthma was the result of his exposure to oil fires and chemicals during the Gulf War. If his exposure to these conditions had caused his asthma, the examiner explained, she would not have expected his May 1993 separation examination to be normal. She would also have expected wheezing, shortness-of-breath, and chest tightening to have begun during the Veteran's exposure to the oil fires, suggesting instead that it was unlikely that exposure to oil fires caused asthma to develop a few years later. 

Analysis

The Veteran has a current diagnosis of asthma. According to Dr. W.B.'s records, he was diagnosed with asthma in July 1993, approximately two months before the end of the relevant period of active duty. Thus, the success of the Veteran's claim depends on the existence of a causal relationship - or "nexus" - between his in-service asthma diagnosis and his current asthma disability. See Fagan v. Shinseki, 573 F.3d at 1287.

The most recent VA examiner has suggested that the required nexus does not exist in this case, because his asthma pre-existed service. The indications of a pre-existing asthma appear in the Veteran's self-reported medical history, not in the clinical report of the physician who examined him when he was first enrolled for service. Thus, the presumption of soundness applies to this case. 

Having considered the evidence, the Board finds that the presumption of soundness has not been rebutted. The January 2010 and November 2015 VA opinions indicate that the Veteran had asthma before service, based on reports of medical history suggesting childhood asthma. The Veteran later explained that the reason he told various medical personnel about childhood asthma was that this is what he had been told by his siblings when he was a young child. According to him, his siblings are not medical professionals. Moreover, he did not experience breathing problems for most of his decades-long military career. 

Here, there is some evidence of preexisting asthma and hospitalization for same. However, we are unconvinced that he had medically chronic ashma prior to service. Nothing suggested ongoing problems, limitations or treatment for this acute episode in early childhood. 

The Board has likewise considered the length of his military career and the long periods in which he served without respiratory difficulties. The Veteran credibly testified that, during a decades-long military career, he did not experience breathing difficulties until 1993, which is consistent with the available service treatment records. 

It is now clear from the records of Dr. W.B. that the initial asthma diagnosis as a medically chronic disorder was in July of 1993 and that the Veteran was not discharged from active duty until September of 1993. In addition, there is no credible evidence that the current asthma is unrelated to the in-service asthma.

The July 2016 VA opinion was unfavorable on this point, but it was limited in scope to the narrower issue of whether exposure to environmental hazards in the Persian Gulf caused the Veteran's asthma. Even if the Veteran's asthma is unrelated to Gulf War exposures, he is still eligible to receive benefits for that condition if his current disability began in July 1993 and has continued until today. 

For these reasons, the Board finds that the evidence is approximately evenly balanced as to whether the Veteran's asthma had its onset in service. By law, the doubt resulting from this relative equipoise in the evidence is resolved in favor of the Veteran. 







ORDER

Entitlement to service connection for asthma is granted.






_______________________________ 
H. N. SCHWARTZ
Veterans Law Judge, 
Board of Veterans' Appeals
_______________________________
B. CHATTERJEE
Acting Veterans Law Judge, 
Board of Veterans' Appeals




_________________________________
K. OSBORNE
Veterans Law Judge, 
Board of Veterans' Appeals




Department of Veterans Affairs