﻿Citation Nr: AXXXXXXXX
Decision Date: 11/16/18 Archive Date: 11/15/18

DOCKET NO. 180706-227
DATE: November 16, 2018
ORDER
Service connection for hallux valgus and osteoarthritis of the left great toe is granted.
FINDING OF FACT
Resolving any reasonable doubt in the Veteran’s favor, symptoms of his currently diagnosed hallux valgus and osteoarthritis of the left great toe were chronic in-service and have been continuous since his separation from active duty service.
CONCLUSION OF LAW
Resolving any reasonable doubt in the Veteran’s favor, the criteria to establish service connection for hallux valgus and osteoarthritis of the left great toe are met. 38 U.S.C. §§ 1110, 1112, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on active duty from August 1984 to April 2001. He has additional unverified service in the Reserves and National Guard from January 2003 to January 2006. 
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
Subsequent to the Veteran’s selection of the RAMP processing, the RO issued a May 2018 rating decision, which as pertinent here, reopened but denied the Veteran’s service connection claim for hallux valgus and osteoarthritis of the left great toe. The Veteran timely selected evidence-submission processing. The 90-day time period to submit evidence has elapsed, and this appeal ensued. 
The Board notes that the RO’s reopening of the decision is viewed as a favorable determination and as such, the only issue that remain on appeal is entitlement to service connection, as noted on the title page above.
Service Connection
Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).
Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009).
The Veteran is currently diagnosed with arthritis of the left great toe, which is a type of degenerative joint disease and thus a “chronic disease” under 38 C.F.R. § 3.309(a); therefore, the presumptive provisions of 38 C.F.R. § 3.303(b) for “chronic” in-service symptoms and “continuous” post-service symptoms apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). For a showing of a chronic disorder in service, the mere use of the word chronic will not suffice; rather, there is a required combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings. 38 C.F.R. § 3.303(b). Continuity of symptomatology after service is required where a condition noted during service is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. Id. The presumptive service connection provisions based on “chronic” in-service symptoms and “continuity of symptomatology” after service under 38 C.F.R. § 3.303(b) have been interpreted as an alternative to service connection only for the specific chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 718 F.3d 1331 (Fed. Cir. 2013) (holding that the “chronic” in service and “continuous” post-service symptom presumptive provisions of 38 C.F.R. § 3.303(b) only apply to “chronic” diseases at 3.309(a)).
The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011). This includes weighing the credibility and probative value of lay evidence against the remaining evidence of record. See King v. Shinseki, 700 F.3d 1339 (Fed. Cir. 2012); Kahana, 24 Vet. App. at 433-34. 
A Veteran bears the evidentiary burden to establish all elements of a service connection claim, including the nexus requirement. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009). In making its ultimate determination, the Board must give a veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. Id. at 1287 (quoting 38 U.S.C. § 5107 (b)).
Discussion
The Veteran asserts that his hallux valgus and osteoarthritis of the left great toe began during active duty service and have been continuous since his separation from service. 
The Veteran has a current diagnosis of hallux valgus and osteoarthritis of the left great toe. See e.g., Private treatment records dated in September 2002.
After a careful review of the lay and medical evidence, the Board finds that the evidence is at least in equipoise as to whether the Veteran’s hallux valgus and osteoarthritis of the left great toe is related to his active duty service.
Service treatment records contain a Report of Medical History dated in January 1991 show that the Veteran checked “yes” indicating that he had had “foot trouble.” He also indicated that since his football injury in 1990, the bottom of his foot was hurting after running or standing too much. 
In January 2001, three months prior to his discharge from active duty service, the Veteran filed a claim for VA compensation, which did not include a claim regarding his feet disabilities. Nevertheless, as a result of his pre-discharge claim, the Veteran underwent a VA examination in February 2001, at which time, the examiner physically examined his lower extremities, and noted that examination of the feet revealed no evidence of flat feet or hallux valgus deformities. The examination report does not contain any diagnostic studies such as x-rays or MRIs of the feet.
Private treatment records from Doctors Care Medical Centers dated in September 2002 show diagnosis of osteoarthritis and hallux valgus of the left great toe based on x-ray evidence.
In November 2003 correspondence, the Veteran indicated that during a doctor visit on September 4, 2002, due to complaints of left foot pain, he had x-rays done, and it was brought to his attention that he had arthritis and “T-toe” that was caused by the arthritis as well as flat-feet. Thereafter, in a January 2014 statement in support of claim, the Veteran indicated that he believed his arthritis began in-service but might have been too minor to detect. He related it to his regular military activities, reports of left foot pain and removal of left toenail, as well as to the military boots he was wearing. He further reported that although he experienced pain in the extremities, to include his left foot, it was often explained to him as normal and that “a hot shower and rest would help.” Lastly, he indicated that he never had x-rays on his feet during service, and not until his private doctor examined him in September 2002, at which time he also got special shoes to decrease the amount of stress on the left toe. 
A report of medical examination dated in 2004 shows that the Veteran’s feet were normal, but noted mild pes planus. 
A report of medical history from the Military Health Center dated in March 2005 show that the Veteran reported foot trouble that included bunion, corns, and pain during his National Guard service. 
Subsequent VA treatment records dated in January 2011 indicate that the Veteran complained of left foot discomfort. It was noted that this was gradual and worsened in the previous six-months. The Veteran described the discomfort as “a warm sensation over the dorsum of his left foot.” He reported a history of these symptoms, the last aggravation was after he ran 5K. 
In correspondence dated in July 2017, the Veteran indicated that there was evidence in his service treatment records that he complained of foot pain, and received a few treatments due to removal of an ingrown toenail. He indicated that he did not have x-rays and on the day of discharge did not report any symptoms, which at the time were only mild. He also noted that he had multiple toenail removals in-service and believed that perhaps this also caused his later diagnosed arthritis and hallux valgus.
In September 2017, the Veteran underwent a VA examination to determine the nature and etiology of his foot disabilities. The examiner rendered diagnoses of bilateral flat foot, bilateral hallux valgus, and bilateral plantar fasciitis, but indicated that the hallux valgus was diagnosed in 2006. The Veteran reported that the date of onset of his symptoms was approximately in 1995, and attributed his pain to prolonged standing, marching, and hiking over rough and uneven terrain during his active duty tenure. The examiner noted that imaging studies of the foot were not performed and that there were no significant diagnostic test findings or results. The examiner stated that based on physical examination, the Veteran had toe conditions of bilateral hallux valgus, which he was assessed with “based on STRs dated 03/09/2006” as that was confirmed by observation during the examination. The examiner further stated that the condition was likely caused by improper footwear or bio-mechanical instability, which over time resulted in abnormality in the 1st MTP joint. The examiner noted the Veteran’s reports of injury in 1995 and acknowledged that he received treatment for ingrown toenail that caused pain and inflammation, but concluded that this condition was treated and likely resolved, and medical literature does not support that ingrown toenail could cause the Veteran’s hallux valgus. The examiner noted that hallux valgus was due to repetitive stress on the 1st MTP joint resulting in structural abnormality, and concluded that the Veteran’s condition was less likely than not incurred in or caused by the claimed in-service injury. 
In his October 2017 notice of disagreement, the Veteran indicated that his x-ray appointment was not until a day after his September 2017 examination, and he did not understand how the examiner could render an opinion without the x-ray findings. Furthermore, he referenced his 2002 x-rays which confirmed that he had arthritis in the left great toe. 
In a July 2018 statement, the Veteran indicated that his foot trouble began during active duty, continued during his National Guard service, and have been continuous ever since. He further noted that during his active duty service in recruit training, he was told to select combat boots size 9R, but later in his military career realized that this size was not good for him feet because it was too narrow at the front, so he changed to size 9W. He concluded that the years of wearing the smaller size contributed to his foot problems. Thereafter, in September 2018, the Veteran submitted medical literature showing association between hallux valgus and his now service-connected flatfeet. 
After a review of all the evidence, lay and medical, the Board finds that the evidence is at least in equipoise as to whether symptoms of hallux valgus and arthritis of the left toe began in-service and have been continuous ever since. Notably, x-rays dated in September 2002, approximately seventeen-months after discharge showed evidence of left toe arthritis, and the Veteran credibly and competently reported continuous pain in-service and since service. 
The Board finds that the Veteran’s competent and credible lay statements along with other evidence outweigh the unfavorable opinion provided by the September 2017 VA examiner. In this regard, the examiner did not address the 2002 x-ray evidence of arthritis. Moreover, the opinion failed to address the Veteran’s competent reports of wearing military boots that were too small despite the fact that the examiner acknowledged that ill-fitting footwear can cause hallux valgus. Lastly, the examiner indicated that STRs first showed a diagnosis of hallux valgus in 2006; however, as clearly shown by the record, the Veteran was diagnosed with hallux valgus in September 2002. At the very least, the opinion is based on an inaccurate factual predicate and therefore inadequate and of little probative value.
While additional development could have been undertaken for yet another medical opinion and/or to attempt to obtain the Veteran’s service treatment records from his unverified Reserve and National Guard service, the Board finds the record as it stands is sufficient to support the claim based on the following evidence: (a) upon entry to active duty service, the Veteran’s feet were noted to be normal, without any indication of hallux valgus and/or arthritis; (b) there are competent and credible reports and documented complaints of foot pain in-service, and (c) there is objective evidence of arthritis only seventeen-months after service and such diagnosis accounted for the Veteran’s foot pain complaints. The Board thus concludes that the disability incurred in service and symptoms of arthritis have been continuous since his discharge from active duty service. 
As the evidence supports a finding of presumptive service connection based on “chronic” symptoms during service and “continuous” post-service symptoms of arthritis, the criteria for presumptive service connection at 38 C.F.R. § 3.303(b) have been met, and service connection for hallux valgus and osteoarthritis of the left great toe, is granted.
 
S. B. MAYS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A. Yaffe, Associate Counsel